**William B. BANKS, Plaintiff,**

v.

**John E. POTTER, Postmaster General, Defendant.**

**No. CIV A 3:00CV2286(CFD).**

United States District Court,
D. Connecticut.

March 31, 2003.

---

William M. Burke, Fairfield, CT, for Plaintiff.

William A. Collier, U.S. Attorney's Office, Hartford, CT, William M. Brown, Jr., U.S. Attorney's Office, New Haven, CT, Anna V. Crawford, U.S. Postal Service, Windsor, CT, for Defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DRONEY, District Judge.

The plaintiff brought this action alleging that the defendant, John E. Potter,[1] the Postmaster General of the United States, discriminated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, as amended by the Civil Rights Act of 1991 ("Title VII") and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, when his employment was terminated. The defendant has filed a motion to dismiss, or in the alternative, for summary judgment [Docs. 23–1, 23–2].

## I. Facts [2]

The plaintiff, William B. Banks ("Banks"), was hired by the United States Postal Service ("USPS") as a letter carrier in Bridgeport, Connecticut on February 28, 1987. On January 8, 1990, Banks was hit by a car while delivering mail. He sustained injuries, including a herniated disk, from that accident. On November 16, 1990, Banks was hit by a second motor vehicle while off duty. In April 1991, Banks' doctors cleared him to return to restricted, or "light," duty on a reduced schedule. The defendant granted Banks the accommodations of "light" duty and a reduced schedule. Banks did not request any other accommodations.

In 1992, Banks worked at the Beardsley Station, 2741 Main Street, in Bridgeport, Connecticut under Howard Robinson, his supervisor, and Raymond Curryto, the Station Manager. Prior to September 1992, Banks had received discipline on several occasions for attendance issues. On September 30, 1992, citing over fifty instances of Banks' unscheduled absences since November 1991, Curryto issued a notice removing Banks from his employment.

Banks grieved his removal under the collective bargaining agreement, and on May 23, 1993, after a hearing, an arbitra-

---

1. This case was originally brought against William J. Henderson, the former Postmaster General. John E. Potter succeeded Henderson on June 4, 2001 and is automatically substituted as the party defendant by operation of Federal Rule of Civil Procedure 25(d)(1).

2. The following facts are taken from the parties' Local Rule 9(c) statements, summary judgment briefs, and other evidence submitted by the parties. They are undisputed unless otherwise indicated.

tor upheld his removal. Thereafter, Banks filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that his removal was motivated by race and disability discrimination. Following a hearing on May 19, 2000, and by decision dated August 31, 2000, an administrative judge of the EEOC found no evidence of race or disability discrimination in the termination of Banks. The USPS adopted this finding on September 6, 2000. Banks filed the instant action on November 30, 2000.

## II. *Standard*

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .' " *Miner v. Glens Falls,* 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Court resolves "all ambiguities and draw[s] all inferences in favor of the non-moving party in order to determine how a reasonable jury would decide." *Aldrich,* 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991); *see also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992). Additionally "[w]here, as here, the nonmovant bears the burden of proof at trial, the movant can satisfy its burden of production by pointing out an absence of evidence to support an essential element of the non-movant's case." *Ginsberg v. Healey Car & Truck Leasing, Inc.,* 189 F.3d 268, 270 (2d Cir.1999) (citing *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548 and *Tops Mkts.,Inc. v. Quality Mkts., Inc.,* 142 F.3d 90, 95 (2d Cir.1998)).

The Court exercises caution in granting summary judgment in favor of an employer in employment discrimination cases "when, as here, the employer's intent is at issue." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998) (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994)). However, in order to defeat a defendant employer's motion for summary judgment, a plaintiff employee must offer "concrete evidence from which a reasonable juror could return a verdict in his favor" and may demand a trial simply because the central issue is the defendant employer's state of mind. *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988) (internal quotations omitted).

## III. *Discussion*

### A. *Title VII Race Discrimination Claim*

Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411

U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff alleging disparate treatment based on race in violation of Title VII must first establish a prima facie case of discrimination. To establish a prima facie case of race discrimination, a plaintiff must show (1) membership in a protected class, (2) qualification for continued employment, (3) an adverse employment action, and (4) circumstances that give rise to an inference of discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The burden on the plaintiff of presenting a prima facie case under *McDonnell Douglas* is "minimal." *James v. New York Racing Ass'n,* 233 F.3d 149, 153 (2d Cir.2000) (internal quotation marks omitted).

■ Once a prima facie case is established, the burden shifts to the employer to show a legitimate, non-discriminatory reason for the plaintiff's termination. *See id.* If the employer does so, the plaintiff bears the "ultimate burden" of proving " 'that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' " *Roge v. NYP Holdings, Inc.,* 257 F.3d 164, 168 (2d Cir.2001) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)); *see also Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). A plaintiff's prima facie case plus a showing of pretext may defeat a properly supported summary judgment but will not always do so. *See Lizardo v. Denny's, Inc.,* 270 F.3d 94, 103 (2d Cir.2001) (citing *Reeves,* 530 U.S. at 146–48, 120 S.Ct. 2097). Instead, the court must determine whether the plaintiff's proof could convince a reasonable factfinder that discrimination motivated his employer. *See id.* In making this determination, the court should consider the strength of the prima facie case, the proof

that defendant's explanation was false, and any other probative proof in the record. *See Allah v. City of New York Dep't of Parks & Recreation,* 47 Fed.Appx. 45, 48 (2d Cir.2002).

The defendant claims that Banks fails to establish the second and fourth elements of his prima facie case. As to the second element, the defendant argues that Banks has not demonstrated that he was qualified for continued employment because he was frequently absent, and thus, not performing his job. As to the fourth element, the defendant argues that Banks has not identified any similarly-situated, non-African-American employees who were treated more favorably than him. The defendant also argues that it has demonstrated a legitimate, non-discriminatory reason for its actions, which Banks has not established is a pretext for discrimination.

[4, 5] As to the second element, the Court finds that Banks has satisfied his burden of proof. "To show 'qualification' sufficiently to shift the burden of providing some explanation of the discharge to the employer, the plaintiff need not show perfect performance. Instead, she need only make the minimal showing that *she possesses the basic skills necessary for performance of the job.*" *Gregory v. Daly,* 243 F.3d 687, 696 (2d Cir.2001) (citations and internal quotation marks omitted) (emphasis in original). The Second Circuit has warned courts not to confuse the qualification requirement with the second stage of the burden-shifting analysis in which the employer offers a non-discriminatory reason for the discharge:

In a discharge case in which the employer has already hired the employee into the job in question, the inference of minimal qualification is, of course, easier to draw than in a hiring or promotion case because, by hiring the employee, the employer itself has already expressed a

belief that she is minimally qualified. Moreover, when, as in this case, the employer has retained the plaintiff for a significant period of time and promoted her, the strength of the inference that she possesses the basic skills required for the job is heightened. An employer's dissatisfaction with even a qualified employee's performance may, of course, ultimately provide a legitimate, non-discriminatory reason for the employer's adverse action. But the crucial point remains the same: the qualification prong, as to which the initial burden lies on plaintiff, cannot be transformed into a requirement that the plaintiff anticipate and disprove an employer's explanation that inadequate ability or performance justified the job action at issue. *Id.* at 696–97. Accordingly, in order to establish he was "qualified for the position," Banks need not show that he "was performing his duties satisfactorily.... All that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer." *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 91–92 (2d Cir.2001). The defendant does not dispute that Banks was actually capable of performing the tasks assigned to him. Accordingly, Banks has met his minimal burden as to this element of his prima facie case.

█ As to the fourth prong, the Court concludes that Banks has satisfied his burden of showing circumstances that give rise to an inference of discrimination. In order to establish that an employer treated a similarly situated employee differently, there must be evidence that the employees were similarly situated "in all material re-

spects." *McGuinness v. Lincoln Hall,* 263 F.3d 49, 54 (2d Cir.2001). In *Graham v. Long Island R.R.,* 230 F.3d 34 (2d Cir. 2000), the Second Circuit indicated that "similar situation" should be based on "(1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." 230 F.3d at 40.

In his complaint, Banks identified six non-African American employees whom he believes were similarly situated to him, but were treated more favorably-Luz Matos, Arten Sukoian, Joseph Adley, Gail Sebastian, Gloria Kozlov, and "Mr. Covellazi." Compl. at ¶ 14. In a declaration by Robert J. Kelly, a former fellow employee of Banks, submitted in connection with Banks' opposition to the defendant's motion for summary judgment, Kelly identified Lynne Cooke, Laurie Varrone White, Arten Sukoian, Luz Matos, and "Mr. Velardi" as USPS employees who were similarly situated to Banks, but treated differently. Kelly also stated that "Lettercarrier Wilds," an African–American who was also similarly situated to Banks and was, like Banks, discriminated against on the basis of his race.[3]

Banks appears to argue that each of these individuals were employed in similar positions to him, suffered injuries and were given accommodations, but were not terminated on the basis of their medical absences. According to Kelly's declaration, Lynne Cooke, a Caucasian, is a letter carrier who suffered an off-the-job injury and was accommodated by being given permanent light duty. Kelly's declaration also provides that Laurie Verrone White

---

**3.** In its reply to the plaintiff's objection to the motion for summary judgment, the defendant has moved to strike from the record references to the persons identified in Kelly's dec-

laration who were not identified during discovery-Cooke, White, Velardi, and Wilds [Doc. # 34]. The motion is DENIED, without prejudice.

was another Caucasian who suffered an off-the-job injury and was accommodated by being given permanent light duty. Like Banks, White was under the supervision of the "Bridgeport Postmaster." Also according to Kelly's declaration, Arten Sukoian was a Caucasian customer service employee under the supervision of the "Bridgeport Postmaster" who injured his thumb and was given a new position that was created especially for him at the "Middle Street Post Office," the main USPS office in Bridgeport. Banks Dep. at 27. Kelly's declaration describes Luz Matos as a person of Hispanic origin who suffered an on-the-job injury, underwent surgery, was given accommodations by the defendant, and was eventually promoted. Banks testified at his deposition that Matos was a letter carrier who worked in the main USPS office in Bridgeport. Banks Dep. at 25–26. As to "Mr. Velardi," Kelly's declaration provides that he was a Caucasian "craft employee" who had discipline, time, and attendance problems similar to Banks. Despite these problems, according to Kelly's declaration, accommodations were made for Velardi and a promotion was given to him. Kelly's declaration also provides that "Lettercarrier Wilds" was an African–American "city carrier" who suffered an on-the-job injury, was not offered light duty, and rather, was fired for attendance issues. Kelly's declaration also states that the USPS provision which Banks allegedly violated, applies to each of the employees mentioned in the declaration.[4]

The Court concludes that Banks has satisfied his minimal burden at the prima facie case phase of establishing that similarly situated employees were treated differently. As the Second Circuit held in *McGuinness:*

> [A]n employee "must be similarly situated in all material respects"—not in all respects. A plaintiff is not obligated to show disparate treatment of an identically situated employee. To the contrary, *Shumway* holds that in those cases in which a plaintiff seeks to establish her minimal prima facie case by pointing to disparate treatment of a similarly situated employee, it is sufficient that the employee to whom plaintiff points be similarly situated in all material respects. In other words, where a plaintiff seeks to establish the minimal prima facie case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination.

263 F.3d at 54 (internal citations omitted). Here, Banks' evidence indicates that he was similarly situated in all material respects as to at least one of the non-African-American employees he identified. "Mr. Velardi," identified in Kelly's declaration, was a postal employee of the USPS in Bridgeport. Additionally, like Banks, he apparently suffered injuries from either an on-the-job or off-the-job accident and was given accommodations. Banks' evidence also indicates that Velardi had discipline, time, and attendance problems similar to Banks. *Cf. Hunter v. Henderson,* No. 3:91CV396(EBB), 1999 WL 644733, at *11 (D.Conn. Aug.17, 1999) (finding that employees were not similarly situated in all material respects because they did not have similar discipline records). Finally, Banks' evidence indicates that Velardi was

---

4. Banks' deposition indicates that he did not know the specifics of how Joseph Adley, Gloria Kozlov, or "Mr. Covellazi" are similarly situated to him. Banks Dep. at 29–34. Additionally, neither Banks' deposition, nor Kelly's declaration mention Gail Sebastian.

not terminated. Accordingly, Banks has presented evidence of an employee who was sufficiently similar to Banks to support at least a minimal inference that the difference of treatment may be attributable to discrimination. *See McGuinness,* 263 F.3d at 54.

Further, though Banks has not established that Velardi was directly supervised by Banks' supervisors, *see, e.g., Shumway v. United Parcel Serv.,* 118 F.3d 60, 64 (2d Cir.1997); *Hunter,* 1999 WL 644733, at *9–12, he has presented evidence that Velardi was subject to the same rules regarding absenteeism and discipline pursuant to which Banks was terminated. As well, Velardi was employed within the same city as Banks–Bridgeport–and according to Banks, was under the supervision of the "Bridgeport Postmaster."

██ The Court also concludes that, though the defendant has proffered evidence of a legitimate, non-discriminatory reason for his discharge, Banks has also presented evidence by which a reasonable person could conclude that this reason is pretextual. As indicated above, once the plaintiff has set forth a prima facie case, the burden shifts to the defendant to provide a non-discriminatory reason for the adverse employment decision. *See James,* 233 F.3d at 154. The defendant asserts that the reason for Banks' termination was his failure to report to work on over fifty occasions in 1991 and 1992. Having offered a non-discriminatory reason for the discharge, the burden again shifts to Banks to show that this reason is merely a pretext for discrimination. *See id.* (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–10, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Banks does not dispute that he was absent on the occasions noted by the defendant or that he received discipline in the past for attendance problems. However, Banks argues and has presented evidence that this reason is pretextual because he provided medical documentation for the bulk of the absences and the majority of the absences were excused by the defendant. *See* Banks' Decl. at ¶¶ 7, 15; *see also* EEOC decision, dated August 29, 2000, at 4 (indicating that of fifty absences, less than seven were not excused by the defendant). In light of this evidence, and the evidence presented in connection with Banks' prima facie case, the Court concludes that Banks has satisfied his burden as to this component of the burden-shifting scheme. He has presented evidence by which a reasonable fact-finder could conclude that the asserted reason is pretextual and that discrimination motivated his employer.

For the foregoing reasons, the Court concludes that genuine issues of material fact exist as to whether the defendant discriminated against Banks on the basis of his race. Accordingly, the Court declines to grant summary judgment as to Banks' Title VII race discrimination claim.

### B. *Rehabilitation Act Claim*

██ The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of ... his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...." 29 U.S.C. § 794(a). In analyzing a discrimination claim under the Rehabilitation Act, the Court must apply the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Regional Econ. Cmty. Action Program, Inc. v. City of Middletown,* 294 F.3d 35 n. 2 (2d Cir.2002).

Under *McDonnell Douglas,* [a] plaintiff bears the initial burden of proving by a

preponderance of the evidence a prima facie case of discrimination. The burden of production then shifts to [the] defendants, who must offer through the introduction of admissible evidence a non-discriminatory reason for their actions that, if believed by the trier of fact, would support a finding that unlawful discrimination was not a cause of the disputed employment action. [The][p]laintiff then must show that the proffered reason was merely a pretext for discrimination, which may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more. *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.,* 198 F.3d 68, 72 (2d Cir. 1999) (internal quotation marks, alterations, and citations omitted); *see Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147–48, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The defendant in this case argues that summary judgment is appropriate on Banks' disability discrimination claim because (1) Banks has failed to establish a prima facie case of disability discrimination; and (2) Banks was not otherwise qualified in light of his repeated absences. Banks opposes summary judgment, arguing that he is disabled under the Rehabilitation Act and that there are genuine issues of material fact as to whether the defendant discriminated against him on the basis of his disability.

■ To establish a prima facie case of employment discrimination under the Rehabilitation Act, a plaintiff must prove that: (1) he is an "individual with a disability," (2) he was "otherwise qualified" for a position, (3) he was denied that position on

the basis of his disability, and (4) the employer receives federal funds. *See D'Amico v. City of New York,* 132 F.3d 145, 150 (2d Cir.1998). The defendant does not dispute that it receives federal funds. However, it disputes whether Banks was disabled within the meaning of the ADA and whether he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation.

■ The term "individual with a disability" is defined in the Rehabilitation Act as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 705(20)(B). Accordingly, whether one is a disabled person under the Rehabilitation Act necessitates a two-pronged inquiry. *See Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 721 (2d Cir.1994), *cert. denied,* 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995). First, the Court must determine whether the plaintiff has a physical or mental impairment. *See id.* It then must analyze whether such impairment substantially limits one or more of that person's major life activities. *See id.*

As to whether Banks suffers from an impairment, in *School Board of Nassau County v. Arline,* 480 U.S. 273, 279, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987), the Supreme Court held that "[i]n determining whether a particular individual is handicapped as defined by the Act, the regulations promulgated by the Department of Health and Human Services are of significant assistance ... [and] provide 'an important source of guidance on the meaning [of the Act].'" The regulations define physical or mental impairment as "any physiological disorder or condition ... affecting [the] ... musculoskeletal [system]." 45 C.F.R. § 84.3(j)(2)(i)(A); *see*

*also* 28 C.F.R. § 41.31(b)(1)(i) (same). In light of the evidence presented regarding Banks' injuries following the January 1990 car accident and the injuries' effects on Banks, the Court finds that a reasonable juror could find that Banks suffered from a "physical impairment."

■ As to whether Banks' impairment substantially limits a major life activity, "major life activities" under the Rehabilitation Act include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii); *see also* 28 C.F.R. § 41.31(b)(2) (same). "Because the Act is a remedial statute, it and the regulations promulgated under it are to be construed broadly." *Heilweil,* 32 F.3d at 722 (citing *Gilbert v. Frank,* 949 F.2d 637, 641 (2d Cir.1991)).

Banks argues that his impairment limits his ability to walk, lift, carry, stand or sit for a long period of time, and turn his head. The Second Circuit has recognized that walking is a major life activity, and has assumed, without deciding, that lifting, carrying, standing, and sitting are also major life activities. *See Colwell v. Suffolk Cty. Police Dep't,* 158 F.3d 635, 642 (2d Cir.1998), *cert. denied,* 526 U.S. 1018, 119 S.Ct. 1253, 143 L.Ed.2d 350 (1999). The Court assumes, without deciding, that turning one's head is a major life activity, as it appears to be "of central importance to most people's daily lives." *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

The Court must next determine whether Banks' impairment "substantially limited" any of these major life activities. *See Colwell,* 158 F.3d at 643. Neither the ADA, nor the Rehabilitation Act, define "substantially limits." According to the Supreme Court, however, "'substantially'

suggests 'considerable' or 'specified to a large degree.'" *Sutton,* 527 U.S. at 491, 119 S.Ct. 2139. The EEOC regulations for the ADA define "substantially limited" as:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). "The regulations recommend that the following factors be considered in determining whether an individual is substantially limited in a major life activity: '(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.' 29 C.F.R. § 1630(j)(2)." *Colwell,* 158 F.3d at 643 (using EEOC regulations to interpret "substantially limits"). The Court should compare the impaired ability to perform the major life activities with the "average person's ability to perform those activities." *Colwell,* 158 F.3d at 643.

Each major life activity that is allegedly "substantially limited" by Banks' impairment is examined below.

### 1. *Walking*

■ Examined in a light most favorable to Banks, his evidence suggests that his ability to walk was limited to the extent that he could not "walk[ ] for prolonged periods of time." Banks Decl. at ¶ 17; Letter from David B. Brown, M.D., dated September 19, 1990. An evaluation performed in July 1991 recommended that

Banks not walk for over four hours per day. Evaluation of Donald J. Austrian, M.D., dated July 11, 1991. A subsequent evaluation in 1993 did not mention any restrictions in Banks' ability to walk and noted that "he has a full range of motion in his hips, knees, and ankles, with good motor strength, reflexes and vascular supply of the lower extremities." Evaluation of Alan Schlein, M.D., dated June 10, 1993. At his deposition in 2002, Banks testified that he is no longer limited in his ability to walk. Banks' Dep. at 58.

While this evidence suggests that Banks was restricted in his ability to walk following his accident, it is insufficient to establish a substantial limitation in walking. First, the severity of his restrictions, even in 1990, do not rise to the level of substantial limitation. See Piascyk, 64 F.Supp.2d at 28 (holding that plaintiff's twenty percent impairment of right ankle, ten percent impairment of back, difficulty climbing stairs, marked limp, constant moderate pain in right ankle, periodic need to wear air cast, and inability to walk more than half a mile did not indicate substantial limitation in the ability to walk); Kelly v. Drexel Univ., 94 F.3d 102, 106 (3d Cir. 1996) (holding that plaintiff with severe post-traumatic hip impairment who could not walk more than a mile, could not jog, had to use a hand rail and pace himself when ascending stairs, and had difficulty walking around was not substantially limited in his ability to walk). Furthermore, the temporary nature of these restrictions weighs against a finding of substantial limitation. See Colwell, 158 F.3d at 646; 29 C.F.R. § 1630.2(j)(2) (directing court to consider "[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment"). Accordingly, the evidence is insufficient for a fact finder to reasonably conclude that "the nature and severity of [Banks'] injury significantly restricted his ability to walk as compared with an average person in the general population." Piascyk, 64 F.Supp.2d at 28 (internal quotation marks omitted).

2. *Standing*

With regard to standing, and viewing the evidence in a light most favorable to Banks, in 1990, Banks' impairment prevented him from "standing for prolonged periods of time." Banks Decl. at ¶ 17; Letter from David B. Brown, M.D., dated September 19, 1990. An evaluation performed in July 1991 recommended that Banks not stand for over four hours per day. Evaluation of Donald J. Austrian, M.D., dated July 11, 1991. However, an evaluation performed in December 1991 indicated that Banks "stands from a seated position without having to use his hands, walks on tiptoes and on his heels, [and] can stand on either lower limb independently while disrobing and rerobing." Letter of L. Ronald Homza, M.D., dated December 19, 1991.

The Court concludes that Bank's restriction in his ability to stand does not amount to a substantially limitation in the major life activity of standing. As noted with regard to Banks' restrictions in walking, the severity of his restrictions in standing, even in 1990, are insufficient to establish substantial limitation. The evidence does not indicate that Banks was severely restricted in his ability to stand as compared with the average person. See Colwell, 158 F.3d at 643–45 (difficulty standing "at attention" for "any period of time," standing "in one spot," standing "for a long period of time," and need to perform sedentary work does not indicate substantial limitation in the ability to stand); Hopkins v. Digital Equip. Corp., 1998 U.S. Dist. LEXIS 15762 (S.D.N.Y. Oct. 8, 1998) (doctor's conclusion that plaintiff cannot stand for a prolonged period does not establish

an impairment that would substantially limit a major life activity). The nature and severity of such a limitation do not connote a substantial deviation from the ability of the average person to stand. Additionally, the temporary nature of those restrictions weighs against a finding of substantial limitation. Accordingly, Banks has failed to create a genuine issue of material fact that he was substantially limited in the activity of standing.

### 3. *Lifting and Carrying*

■ With regard to lifting and carrying, again viewing the evidence in a light most favorable to Banks, after his accident, Banks' impairment prevented him from "raising his arms above [his] shoulders without tremendous pain," Banks Decl. at ¶ 6, lifting in excess of thirty pounds in July 1990, Letter from David B. Brown, M.D., dated July 14, 1990, and lifting in excess of fifty pounds in November 1990. In 1991, Banks' impairment prevented him from carrying a mail bag over his shoulder or engaging in the repetitive use of his upper extremities for delivering or sorting mail. Letter from Harry P. Engel, M.D., dated March 25, 1991. A further evaluation performed in July 1991 recommended that Banks not lift or carry over ten pounds for over four hours per day. Evaluation of Donald J. Austrian, M.D., dated July 11, 1991.

The Court holds, however, that this does not amount to a substantial limitation in the major life activities of lifting or carrying. While this evidence suggests Banks was hindered in the activities of lifting and carrying, it does not constitute a severe restriction in his ability to lift or carry as compared with the average person. See *Colwell,* 158 F.3d at 644 (evidence that plaintiff could lift only light objects of ten to twenty pounds infrequently was not sufficient to establish that plaintiff suffered a substantial limitation on his ability to lift); *Sherrod v. American Airlines,* 132 F.3d 1112, 1120 (5th Cir.1998) (restriction to lifting forty-five pounds occasionally and twenty pounds frequently does not establish substantial limitation in ability to lift, but merely indicates a limitation in "*heavy lifting*"); *Helfter v. United Parcel Serv.,* 115 F.3d 613, 617 (8th Cir.1997) (evidence that plaintiff could not lift more than ten pounds frequently or twenty pounds occasionally did not raise genuine issue of material fact on whether her impairments imposed substantial limitations on any major life activity); *Thompson v. Holy Family Hosp.,* 121 F.3d 537, 539–40 (9th Cir. 1997) (inability to lift more than twenty-five pounds frequently, more than fifty pounds twice a day, or more than one-hundred pounds once a day does not constitute a substantial limitation on any major life activity); *Aucutt v. Six Flags Over Mid–America, Inc.,* 85 F.3d 1311, 1319 (8th Cir.1996) (twenty-five pound lifting restriction did not significantly restrict major life activities); *Kirkendall v. United Parcel Serv.,* 964 F.Supp. 106, 111 (W.D.N.Y.1997) (thirty pound lifting restriction was not substantial limitation on lifting or any other major life activity). Banks must show that his limitations in his ability to lift and carry were "substantial, not amounting to only a mere difference in conditions, manner or duration" as compared to the average person. *Bartlett v. New York State Board of Law Examiners,* 226 F.3d 69, 80 (2d Cir.2000). As he has not done so, Banks has failed to create a genuine issue of material fact that he was substantially limited in the activities of lifting or carrying.

### 4. *Sitting*

■ As to sitting, Banks evidence indicates that his impairment prevented him from "sitting for prolonged periods of time." Banks Decl. at ¶ 17. An evaluation

performed in July 1991 recommended that Banks not sit for over four hours per day. Evaluation of Donald J. Austrian, M.D., dated July 11, 1991. However, an evaluation performed in December 1991 indicated that Banks "d[id] not seem to be uncomfortable while sitting." Letter of L. Ronald Homza, M.D., dated December 19, 1991.

The Court concludes that Banks' restricted ability to sit does not amount to a substantial limitation in the major life activity of sitting. The evidence does not indicate that Banks was severely restricted in his ability to sit as compared with the average person. *See Colwell,* 158 F.3d at 644 (evidence that Colwell could not sit "too long," had a problem with "prolonged" sitting, could not "sit in one position too long," and had to "keep getting up and down and moving around" did not indicate a substantial limitation in the ability to sit); *see id.* (evidence that Abrams could not sit "for long periods of time" at his desk, and had to get up and "walk around to just stretch it out" did not indicate a substantial limitation in the ability to sit). The nature and severity of such a limitation does not connote a substantial deviation from the ability of the average person to sit. Accordingly, Banks has failed to create a genuine issue of material fact that he was substantially limited in the activity of sitting.

### 5. *Turning One's Head*

 Banks' affidavit states that, after his January 1990 accident, his neck was "so stiff that I could not turn [my] head without turning my entire body." Banks Decl. at ¶ 6. Banks has not submitted any other evidence, however, as to the duration of this restriction. He has not submitted any evidence concerning how long his neck was affected in this manner, whether the restrictions were episodic or consistent, or any other evidence as to the severity or existence of this limitation in turning his head. Accordingly, he has failed to create a genuine issue of material fact that his impairment caused him to be significantly restricted as to the condition, manner or duration under which he could turn his head as compared to the condition, manner, or duration under which the average person in the general population could turn his head, as required by the Rehabilitation Act. *See* 29 C.F.R. S 1630.2(j)(1). Therefore, Banks has failed to create a genuine issue of material fact that he was substantially limited in the activity of turning his head.

Accordingly, the Court concludes that Banks has not presented sufficient evidence by which a trier of fact could reasonably find that he has a disability under the Rehabilitation Act. Thus, Banks has failed to establish a prima facie case of disability discrimination.[5]

### IV. *Conclusion*

For the foregoing reasons, the defendant's motion to dismiss, or in the alternative, for summary judgment [Doc. # 23] is GRANTED IN PART, DENIED IN PART. Summary judgment is granted as to Banks' Rehabilitation Act claim. Accordingly, only his Title VII race discrimination claim remains in the case.

---

5. Accordingly, the Court need not reach the defendant's further argument that Banks was not "otherwise qualified" for his position.