Sheila V. McGUINNESS,
Plaintiff–Appellant,

v.

LINCOLN HALL, of Lincolndale, New York 10540, Defendant–Appellee.

Docket No. 00–7894.

United States Court of Appeals,
·Second Circuit.

Argued May 21, 2001.

Decided Aug. 30, 2001.

Derick C. January, Brinton & January, White Plains, NY, for plaintiff-appellant.

Josephine Trovini, Plunkett & Jaffe, P.C., White Plains, NY, for defendant-appellee.

Before: LEVAL and PARKER, Circuit Judges, and KEENAN, District Judge.[*]

LEVAL, Circuit Judge:

Plaintiff appeals from a judgment of the United States District Court for the Southern District of New York (Mark D. Fox, Magistrate Judge), granting summary judgment to defendant and dismissing plaintiff's claims of race and gender discrimination. The magistrate judge ruled that plaintiff had failed to establish a prima facie case of race discrimination because she could not show that similarly situated employees had been treated differently with respect to severance pay. In particular, the magistrate judge ruled— relying on district court opinions and on its interpretation of our decision in *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60 (2d Cir.1997)—that the similarly situated employee "*must* have reported to the same supervisor as the plaintiff, *must* have been subject to the same standards governing performance, evaluation, and discipline, and *must* have engaged in conduct similar to Plaintiff[ ] without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it." District Ct. Op. at 6 (quoting *Francis v. Runyon*, 928 F.Supp. 195, 203 (E.D.N.Y.1996) (quoting *Mazzella v. RCA Global Communications, Inc.*, 642 F.Supp. 1531, 1547 (S.D.N.Y.1986))) (emphasis added). The magistrate judge also ruled that even if plaintiff had established a prima facie case of discrimination, she had not proffered evidence sufficient to rebut the nondiscriminatory reason defendant advanced as the reason for its severance pay practices.

[*] The Honorable John F. Keenan, Senior District Judge, United States District Court for the Southern District of New York, sitting by designation.

We disagree with these rulings. Plaintiff has made out a prima facie case that she was treated differently on the basis of her gender and her race, and she has proffered evidence that could support a determination that the defendant's nondiscriminatory explanation for its actions was false. Plaintiff has nonetheless not proffered evidence from which a trier of fact could draw a reasonable inference of gender discrimination. She has, however, satisfied her burden to present evidence that could support a reasonable finding that she was treated differently on the basis of her race. We therefore vacate the judgment and remand for further proceedings on the issue of race discrimination.

## BACKGROUND

The relevant facts, construed here in the light most favorable to the plaintiff, may be stated briefly. Defendant Lincoln Hall operates a residential program for troubled youth in Lincolndale, New York. On April 2, 1996, Lincoln Hall hired plaintiff Sheila McGuinness, a white woman, as its Director of Human Resources. As part of a general reorganization initiated by Lincoln Hall's then-Executive Director, Lincoln Hall also arranged to hire—among other people—Carlton Mitchell, a black man, as Deputy Director of Programs in the spring of 1997, and Anthony J. Mohammed Dobbins, another black man, as Campus Ministry Coordinator in February 1998. Both McGuinness and Mitchell served on a body known as the Executive Cabinet, which was an executive group consisting of Lincoln Hall's top administrators.

In March 1998, the Lincoln Hall Board of Managers decided to reverse course and undo the reorganization that had been initiated by its Executive Director. The Board discharged the Executive Director, and within two months every member of the Executive Cabinet except one either resigned or was discharged. In particular, three Executive Cabinet members were discharged: a white male named Paul Turnley, who served as the Deputy Director of Development; McGuinness; and Mitchell.

McGuinness was notified on April 27 that Lincoln Hall was eliminating her position. Lincoln Hall informed McGuinness by letter that she was entitled to certain benefits, including a layoff package of two weeks severance allowance (one week for each of McGuinness's two years of service). The letters did not include a request that McGuinness sign a general release of claims against Lincoln Hall.

Mitchell was notified on April 29 that his position also had been eliminated. Lincoln Hall informed Mitchell by letter that Lincoln Hall would agree to pay him twelve weeks of pay in return for his agreement to sign a "waive[r] of any and all claims . . . arising from [his] employment . . . including, but not limited to, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, and the New York State and New York City Human Rights Laws." Mitchell testified in his deposition that Lincoln Hall made the offer of twelve weeks pay simultaneous with informing him of his discharge and before Mitchell had requested or negotiated any such payment.

At approximately the same time, Lincoln Hall discharged Turnley, the white male Deputy Director of Development. Lincoln Hall did not provide a severance package to Turnley. Nor did Lincoln Hall request a general release of claims from him. One and a half months later, on June 15, 1998, Lincoln Hall discharged Dobbins, the black man whom Lincoln Hall had hired as Coordinator of Campus Ministries in February. Lincoln Hall's letter to Dobbins—like its letter to Mitchell—offered to pay

Dobbins a sum of money significantly in excess of the amount provided to McGuinness, in return for a general release of claims. At the time Dobbins was fired he had worked at Lincoln Hall for approximately four months—substantially less than the two years McGuinness had worked at Lincoln Hall at the time of her discharge.

## DISCUSSION

### I. Plaintiff's Prima Facie Case

■ A showing that the employer treated a similarly situated employee differently is "a common and especially effective method" of establishing a prima facie case of discrimination, but it "is only one way to discharge that burden." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir.2001). Where a plaintiff in a severance pay case seeks to establish her prima facie case in this manner, she may make out a prima facie case of employment discrimination by showing that she is within a protected group; that she is qualified for the position; that she was subject to an adverse employment action involving severance pay; and that a similarly situated employee not in the relevant protected group received better treatment. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Fisher v. Vassar College*, 114 F.3d 1332, 1335 (2d Cir.1997) (in banc); *see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 19 (2d Cir.1995). As we have often emphasized, the burden of establishing this prima facie case in employment discrimination cases is "minimal." *E.g., St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir.2000); *Fisher*, 114 F.3d at 1335, 1340 n. 7; *see also Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ("not onerous"). Moreover, because the facts inevitably vary in different employment discrimination cases, both the Supreme Court and this Court have explained that the "prima facie proof required" in a given case will depend on the specific facts in question. *McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. 1817.

■ It is not contested that plaintiff is a white woman and that she was qualified for the position. Furthermore, plaintiff has proffered evidence sufficient to allow a trier of fact to find that defendant offered her a different and less desirable severance package (one which involved less money) than it offered to plaintiff's colleague Carlton Mitchell, a black man who like plaintiff was an executive-level employee, and who was discharged two days after plaintiff. Under the circumstances of this case, this evidence alone satisfied plaintiff's "minimal" burden to establish a prima facie case that she was treated differently on the basis of her race and gender.

■ In *Shumway* we ruled where a plaintiff seeks to make out her prima facie case by pointing to the disparate treatment of a purportedly similarly situated employee, the plaintiff must show that she shared sufficient employment characteristics with that comparator so that they could be considered similarly situated. The magistrate judge interpreted *Shumway* to mean that another employee cannot be similarly situated to a plaintiff unless the other employee had the same supervisor, worked under the same standards, and engaged in the same conduct. This was a misreading of *Shumway*. In *Shumway*, we explained that such an employee "must be similarly situated in all *material* respects"—not in *all* respects. 118 F.3d at

64 (emphasis added).[2] A plaintiff is not obligated to show disparate treatment of an *identically* situated employee. To the contrary, *Shumway* holds that in those cases in which a plaintiff seeks to establish her minimal prima facie case by pointing to disparate treatment of a similarly situated employee, it is sufficient that the employee to whom plaintiff points be similarly situated in all material respects. *See id.* In other words, where a plaintiff seeks to establish the minimal prima facie case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination.

In *Shumway*, plaintiff was forced to resign because of her violation of a rule against intracompany dating. Plaintiff proffered evidence that other male employees had not been forced to resign even though they also violated the rule against intracompany dating. We held that the employees to whom the plaintiff pointed were not similarly situated in material respect because there were so many distinctions between the plaintiff's situation and theirs that the defendant's treatment of those employees had no logical relevance to the plaintiff's claims. For example, the decision-maker in *Shumway* had not supervised the employees involved in the alleged other instances of rule violation; none of the male employees had been in prohibited relationships for as long as plaintiff had; or had engaged in harassment (as she had) after the end of the relationship; or had been warned of the policy against dating (as she was), had complaints brought against them (as she

did), or lied to supervisors when confronted (as she had). *See Shumway*, 118 F.3d at 64. Moreover, we noted in *Shumway* that there was "no evidence" that the employer "knew about any other violations of the 'no fraternization' rule." *Id.* at 65. Absent evidence that the employer knew of the alleged violations of the fraternization rule by male employees, and given the multitude of additional distinctions between the plaintiff and the employees whom she alleged were treated disparately, we concluded that the plaintiff's testimony "generously construed" was made up of "conclusory statements of no probative value" on the questions at issue. *Id.*

■ Here, by contrast, plaintiff has established that Mitchell was far more similarly situated to plaintiff McGuinness, so as to give at least minimal support to her claims that the severance differentials may have been based on race or gender discrimination. In the broadest outlines, plaintiff has established that she and Mitchell held positions of roughly equivalent rank (both in the Executive Cabinet), that she and Mitchell were fired at roughly the same time, that the decisions with respect to the severance were both made at the highest levels of the company, and that Mitchell received considerably more money in severance. The differences between plaintiff and Mitchell are not nearly as significant as those separating the plaintiff in *Shumway* from her comparators, and are not so significant as a matter of logic as to render defendant's disparate treatment of Mitchell irrelevant to plaintiff's claims of discrimination. We conclude that plaintiff's proffer of evidence that defendant treated Mitchell differently

---

**2.** We have already noted that because a Title VII plaintiff may establish a prima facie case of discrimination in a number of different ways depending on the specific facts of a given case, *Shumway* does not require that a plaintiff always be able to show disparate treatment of an otherwise similarly situated employee as a necessary prerequisite to a prima facie case under Title VII. *See Abdu–Brisson*, 239 F.3d at 467.

satisfies the minimal requirements to state a prima facie case of disparate treatment under the *McDonnell Douglas* framework.

## II. Plaintiff's Evidence of Disparate Treatment

By establishing the "minimal" prima facie case, a plaintiff "creates a presumption that the employer unlawfully discriminated, and thus places the burden of production on the employer to proffer a nondiscriminatory reason for its action." *James*, 233 F.3d at 154 (internal quotation marks and citation omitted). If the defendant did not contest the plaintiff's prima facie case, the defendant's failure to discharge the burden of production by presenting a nondiscriminatory reason would result in a judgment for the plaintiff. *See id.* If, however, the employer

> articulates a nondiscriminatory reason for its actions, the presumption completely drops out of the picture. [T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated . . . remains at all times with the plaintiff. Thus, once the employer has proffered its nondiscriminatory reason, the employer will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.

*Id.* (internal quotation marks and citations omitted).

Defendant has presented evidence that it offered less money to plaintiff than to Mitchell because Mitchell negotiated for his severance; because Mitchell retained counsel and threatened to bring legal claims; and because Mitchell had been highly recruited and faced poor job prospects because of a seasonal lull in hiring in the months following his discharge. Plaintiff, in turn, contends that the defendant's proffered reasons are false, pointing to evidence in the record indicating that defendant first offered Mitchell a severance package that included more money than it offered to plaintiff before Mitchell took the actions now asserted as justification for the differences between the offers, and before Mitchell raised his recruitment and job prospects.

Plaintiff has thus presented evidence from which a reasonable trier of fact could decide that defendant's proffered reasons for offering plaintiff less money in her severance package are false. We recently explained in *James* that in some circumstances, "a prima facie case plus falsity of the employer's explanation can, without more, be enough to support a reasonable finding" that an employee was treated differently on the basis of race or gender. *James*, 233 F.3d at 156. "[I]n other circumstances," however, "a prima facie case, combined with falsity of the employer's explanation, will not be sufficient" to establish disparate treatment on the basis of an illegal criterion. *Id.* Accordingly, the question at this stage of an employment discrimination case, as we have held repeatedly, "is simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred." *Id.*

The district court ruled that the evidence was insufficient to sustain a reasonable finding that defendant treated plaintiff differently on the basis of either her gender or her race. While we agree with the district court's conclusion in relation to gender, we disagree in relation to race.

On the record in this case, no reasonable trier of fact could determine that defendant treated plaintiff differently on the basis of her gender. Plaintiff has proffered absolutely no evidence of statements or conduct by defendant or its agents evincing hostile animus toward women. Nor does plaintiff point to any history or past practice of providing female employees with smaller severance packages than male employees. Indeed, it

is undisputed that at least one additional male executive-level employee was discharged at the same time as plaintiff, and under approximately the same terms. Finally, in the months prior to defendant's discharge of plaintiff, defendant discharged its Executive Director, who was also a woman, and offered her a generous severance package. Though plaintiff contends that this severance package resulted from the fact that the Executive Director had an unexpired employment contract for a term, unlike defendant's other employees who were employees at-will, defendant's offer of a high severance payment in this instance nonetheless cuts against plaintiff's claims of gender discrimination in the provision of severance packages.

 Plaintiff has presented considerably more evidence, however, on her claim that she was treated differently on the basis of her race. To be sure, plaintiff has proffered no evidence of statements by defendant's agents evincing hostile discriminatory animus against white employees. Nor has plaintiff presented any evidence of a history or past practice of discrimination against white employees by defendant. Nonetheless, the record is susceptible to a reasonable determination that the defendant offered employees different severance packages on the basis of their race. Turnley, who like plaintiff is white, was also offered a smaller severance package. And, in addition to plaintiff's evidence relating to Mitchell, plaintiff also proffered similar evidence of a severance package involving more cash offered to Dobbins, a high-level black employee discharged a month and a half after plaintiff.

A trier of fact could reasonably determine on the basis of these facts that defendant decided on the basis of race to offer black employees more significant severance payments. Accordingly, the district court erred in ruling that plaintiff had proffered insufficient evidence to establish that she was treated differently on the basis of her race. We therefore remand for further proceedings on plaintiff's race discrimination claim.

### CONCLUSION

The judgment of the district court is vacated and the case is remanded to the district court for further proceedings.