**Gloria J. WILLINGHAM, Plaintiff,**

v.

**John ASHCROFT, Defendant.**

**No. CIV.A. 021972 (ESH/JMF).**

United States District Court,
District of Columbia.

Jan. 25, 2005.

**58**

Iris McCollum Green, Green & Foushee, Washington, DC, for Plaintiff.

Hannah Stires Ard, Jeffrey D. Kahn, Neysun Arya Mahboubi, Kaija Clark, Washington, DC, for Defendant.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This case was referred to me for the resolution of discovery disputes by Judge Huvelle. Currently ripe and ready for resolution are several discovery motions. For the reasons stated herein, Plaintiff's *Motion to Expand Scope of Discovery Order Dated July 20, 2004 and to Compel Answers to Interrogatories and Responses to Request for Production of Documents* [# 43] is denied in part and granted in part, Plaintiff's *Supplement to Motion to Expand Scope of Discovery Order Dated July 20, 2004 and to Compel Answers to Interrogatories and Responses to Request for Production of Documents* [# 44] is denied in part and granted in part, *Defendant's Motion to Quash Subpoena and to Enter a Protective Order Vacating Plaintiff's Notice of Deposition to Former Drug Enforcement Administrator Donnie Marshall* [# 51] is denied in part and granted in part, *Defendant's Motion to Strike Plaintiff's Reply Memorandum to Plaintiff's Motion to Expand Scope of Discovery Dated July 20, 2004 and to Compel Answers to Interrogatories and Responses to Request for Production of Documents* [# 55] is denied, and *Plaintiff's Motion to Late File Plaintiff's Second Motion to Compel Documents* [# 58] is granted.

## I. INTRODUCTION

Plaintiff, an attorney who was an Attorney–Advisor in the Drug Enforcement Ad-

ministration ("DEA"), an agency within the Department of Justice ("DOJ"), claims that her termination from that position was motivated by a retaliatory and discriminatory animus. The defendant, the Attorney General ("AG"), will defend on the grounds that an investigation of plaintiff's behavior on the night she was arrested in Fairfax County for assault and statements she made thereafter justified her removal from federal service, even though she was acquitted of the charges that led to her arrest.

## II. DISCUSSION

### A. The Number of Interrogatories Plaintiff Was Permitted to Propound and the Number of Interrogatories She Has Already Propounded

At a conference held on December 15, 2003, the presiding judge, Judge Huvelle, rejected plaintiff's request that she be permitted to propound 50 interrogatories. Initial Sched. Conf. Tr., Dec. 15, 2003, at 5. While the judge did not memorialize any precise limitation, the pertinent Federal Rule of Civil Procedure permits only 25,[1] and plaintiff did not seek leave of court to propound more than 25 before she served her interrogatories. While she propounded interrogatories numbered from 1 to 25, the AG protests that when one counts separately "all discrete subparts" as the Rule requires,[2] plaintiff has in fact propounded 43 interrogatories.

■ The AG's complaint invokes the analysis I engaged in *Banks v. Office of Senate Sergeant–at–Arms,* 222 F.R.D. 7, 10 (D.D.C. 2004). I stated that ascertaining whether an interrogatory counted as one question or more than one question required a pragmatic approach:

> Perhaps a more pragmatic approach, reminiscent of Justice Stewart's memorable "definition" of pornography, would be to look at the way lawyers draft interrogatories and see if their typical approaches threaten the purpose of the rule by putting together in a single question distinct areas of inquiry that should be kept separate.

*Id.* (footnote omitted). Thus, once a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated. *Id.* Using this analysis, I will now determine which of plaintiff's interrogatories, no matter how they are numbered or otherwise propounded, must be considered more than one interrogatory.

*Interrogatory Number 3.* In this interrogatory, plaintiff begins by asking when Catherine Reeves ("Reeves") started working for the Office of Attorney Personnel Management and the number of disciplinary actions she decided since she came to that office. She then proceeds to inquire about every particular of each disciplinary action Reeves decided. Finally, she shifts once again to whether the disciplined employee thereafter filed a discrimination complaint and seeks all the particulars of the complaint, including its disposition.

In my view, this interrogatory raises two distinct areas of inquiry: (1) Reeves' service, the record of what she did in the cases before her, and the particulars of those cases; and (2) whether the persons disciplined filed discrimination complaints and the particulars of those complaints. Hence, this interrogatory should be counted as two interrogatories.

*Interrogatory Number 9.* In a similar fashion, this interrogatory seeks the identity of any DOJ employee who has been charged with a criminal offense and demands to know the particulars of the crime charged. It then asks whether the DOJ investigated the commission of the offense and proffered disciplinary charges against the employee who committed it and, if so, the name, race, and title of the official who proffered the disciplinary charges and the subsequent history of the charges proffered, if any. Finally, it asks whether the employee had been previously disciplined.

In my view, this interrogatory raises at least three distinct areas of inquiry: (1) the identity and particulars of the cases of any

---

1. Fed.R.Civ.P. 33(a).

2. *Id.*

DOJ employee charged with a criminal offense; (2) the investigation of those charges by the DOJ, any resulting disciplinary charges, and how those charges were resolved; and (3) the prior disciplinary records of the employees disciplined.

*Interrogatory Number 10.* This interrogatory seeks the particulars pertaining to any employee who had been disciplined by the DEA for making a false statement and any punishment that was imposed if the charge was sustained. It then asks whether any such employee was ever removed and, if not, why he was not removed. Again, the interrogatory asks whether the employee had been previously disciplined.

In my view, this interrogatory raises two distinct areas of inquiry: (1) the disciplining of any DEA employee for making a false statement and the removal or non-removal of any such employee; and (2) the prior disciplinary history of the employee.

*Interrogatory Number 14.* This interrogatory seeks information about the filing of complaints of discrimination against 12 persons. Specifically, it requests the particulars of each complaint and then asks if a lawsuit was filed and, if so, the particulars of the lawsuit. While I do not accept the AG's view that this constitutes 12 separate interrogatories, I do believe that it raises two distinct areas of inquiry: (1) the particulars of the complaints filed against these individuals; and (2) the particulars of the lawsuits filed.

*Interrogatory Number 15.* This interrogatory seeks information about a white female DEA employee who was accused of shoplifting. It asks for the particulars of any criminal charge brought against her and whether the DEA investigated the charges, whether disciplinary charges were brought against her, the disposition of those charges, and finally whether she was employed by the DEA after the date of the criminal offense.

In my view, this interrogatory raises three distinct areas of inquiry: (1) the proffering of criminal charges against this woman; (2) the investigation of them by the DEA and any resulting disciplinary charges; and (3) the woman's employment history after the date of any criminal offense.

*Interrogatory Numbers 8, 11, and 12.* Each of these interrogatories seeks information regarding a certain topic and then requests documents relating to that subject area. "Clearly, [a demand for information and a demand for the documents that pertain to that event] are two distinct demands because knowing that an event occurred is entirely different from learning about the documents that evidence it occurred. Thus, a demand for information about a certain event and for the documents about it should be counted as two separate interrogatories," not one. *Banks,* 222 F.R.D. at 10.

■ By my arithmetic, as of Interrogatory Number 15, plaintiff in fact propounded 25 interrogatories (not 15), and the AG was not obliged to answer any more, although he did. I appreciate that plaintiff seeks to expand the number of the interrogatories she can propound but, as I have explained, Judge Huvelle rejected her demand for 50, meaning that the number of interrogatories plaintiff was permitted reverted to the 25 allowed by the Federal Rules of Civil Procedure. Moreover, courts should not condone disobedience to a rule's requirements by permitting a party to violate them and then, after the fact, seek permission to justify that disobedience retroactively.

I will now turn to the AG's objections to the first 15 interrogatories for those are the only ones plaintiff was permitted to propound. I will begin with her assertion that Judge Huvelle's order restricting discovery should be reconsidered and plaintiff should be permitted to seek greater discovery than Judge Huvelle ordered.

## B. Discovery Restrictions Set by Judge Huvelle and Whether the Restrictions Should Be Alleviated

Having heard argument as to the scope of discovery, Judge Huvelle issued the following order:

**FURTHER ORDERED** that on or before August 2, 2004, defendant shall produce information regarding all disciplinary actions taken by Mr. Marshall at the DEA's Office of Chief Counsel and/or Ms. Reeves at the Office of Attorney and Professional

Management against DEA personnel between February 1998 and November 2001. This Order is not meant to cover the specific individuals named by plaintiff, and defendant may, if appropriate, object to the production of this requested information to the extent that it is not covered by the prior sentence. To the extent that plaintiff is dissatisfied with the defendant's production or with the scope of this paragraph, she must file a motion to compel on or before August 23, 2004, and she need not confer with chambers before filing such a motion.

*Order,* July 20, 2004, at 2.

Plaintiff insists that she is entitled to engage in what can be called "national discovery." She wants, for example, the particulars of any charge of misconduct lodged against any attorney of the DOJ in the ten-year period prior to the termination of her employment (Interrogatory Number 5), the names and detailed particulars of any criminal charges against any persons employed by the DOJ since 1985 (Interrogatory Number 9), and the names of any attorneys employed by the DOJ charged with misconduct since January 1, 1985 and the detailed particulars of those cases (Interrogatory Number 12).

This and similar discovery is well beyond the reach of the discovery permitted by Judge Huvelle, and plaintiff seeks to expand the discovery she is allowed to pursue.

■ I begin with the premise that prior acts of discrimination or retaliation are relevant to establish motive and intent. The proponent of such evidence may use it to show that, since a person accused of discrimination or retaliation acted with a discriminatory or retaliatory animus on an earlier occasion, it is more likely than not that he acted with the same animus when he committed the act claimed by the plaintiff to be discriminatory or retaliatory. *Allen v. Perry,* 279 F.Supp.2d 36, 46 (D.D.C.2003) and cases cited therein.

■ As is first obvious, discovery in the ordinary course should be restricted to the acts of the persons claimed to have discriminated or retaliated against plaintiff. Plaintiff rejects such a limitation and demands information as to the entire DOJ or the entire DEA, a division or agency within the DOJ, for a 15–year period. According to plaintiff, since all the lawyers who work in the either the DOJ or DEA are held to the same national standards, it supposedly follows that evidence of how any of them has or has not been disciplined is a fit comparison to how plaintiff was disciplined. *Motion to Expand Scope of Discovery Order Dated July 20, 2004 and to Compel Answers to Interrogatories and Responses to Request for Production of Documents* ("Mot. to Expand and Comp.") at 6–7. But, that a lawyer whose behavior deviated from national standards in Houston was not disciplined for an offense similar to plaintiff's casts no light whatsoever on the motive or intent with which the persons who disciplined plaintiff acted. This is not a national class action in which all the African Americans who make up a national class are claiming a national pattern or practice and therefore legitimately inquiring as to how all African Americans are disciplined compared to their white or Hispanic colleagues. It is an individual action where plaintiff is obliged to prove that she was the victim of racial discrimination or retaliation. How superiors disciplined other people anywhere in the country in the DOJ or the DEA for the 15–year period plaintiff demands cannot possibly make any more likely that the persons who disciplined her were motivated by a discriminatory or retaliatory animus.

Plaintiff's extreme position is hardly supported by the cases she cites that she says stand for the proposition that the persons to whom she wishes to compare herself ("comparators" [3]) need only be disciplined for acts of similar misconduct or comparable seriousness and that it is unnecessary to establish that she and the comparators had the same supervisors. *Id.* at 5–7.

In *Anderson v. WBMG–42,* 253 F.3d 561 (11th Cir.2001), the defendants took the extreme position that the action of the com-

---

**3.** A "comparator" is "one that compares something to be measured with a standard measure." *Webster's Third New International Dictionary* 462 (1976). In Title VII cases, however, it has come to mean another human being to whom one person, most often plaintiff, is being compared.

parators must be "the same or nearly identical" and that comparators cannot, as a matter of law, be similarly situated to the plaintiff unless they were disciplined by the same supervisor. *Anderson*, 253 F.3d at 565. The Eleventh Circuit rejected such a technical construction in favor of the principle that, in a case based on disparate discipline, it sufficed to show that plaintiff and the comparators had engaged in similar rather than identical misconduct and that they had worked in an organization in which plaintiff and the comparators "fell within the primary responsibility of one middle manager and the same supervisory chain of command." *Id.* at 566. That case therefore emphasizes the need to show the similarity of the conduct that led to the disciplining of a plaintiff and her comparators and that, as a minimum, plaintiff and her comparators worked within the same chain of command within an organization. The case can hardly be cited for the proposition that plaintiff is entitled to national discovery of every incident of discipline anywhere in the United States. Indeed, in emphasizing the necessity of plaintiff and the comparators working within the same chain of command, it underscores the correctness of Judge Huvelle's limiting discovery to other discipline administered by the persons who disciplined plaintiff.

In *McGuinness v. Lincoln Hall*, 263 F.3d 49 (2d Cir.2001), the court was dealing with whether plaintiff met her "minimal burden"of establishing a *prima facie* case because she was offered a less favorable severance package than a comparator. *McGuinness*, 263 F.3d at 53. A magistrate judge had dismissed the case, concluding that plaintiff was required to show that she and the comparator had reported to the same supervisor and had been subject to the same standards of performance and engaged in similar conduct, claimed to justify their terminations, "without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it." *Id.* at 51. The court of appeals reversed that determination, finding that the magistrate judge's reading of an earlier precedent, *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60 (2d Cir.1997),

was too narrow. At the stage of assessing whether a plaintiff has made out a *prima facie* case, plaintiff need not show identical circumstances with her comparator in all pertinent respects. It sufficed to show that the plaintiff and the comparator were "similarly situated in all material respects"-not in all respects. *McGuinness*, 263 F.3d at 54 (quoting *Shumway*, 118 F.3d at 64). Again, the court's emphasis on the need to show that plaintiff and the comparators be "similarly situated in all material respects" hardly supports plaintiff's demand for national discovery for 15 years.

Viewed against the case law, Judge Huvelle's definition of the scope of discovery was most reasonable. The time restriction Judge Huvelle imposed is coterminous with the tenure of the official who proposed plaintiff's removal (Donnie Marshall) and the one who issued the final decision (Catherine Reeves) and will universally capture every disciplinary action they took while at the Department. Indeed, it will capture all disciplinary actions, irrespective of their seriousness or comparability to plaintiff's conduct and discipline. By giving plaintiff the universe of all previous disciplinary actions taken by the two persons who either proposed or took disciplinary action against her, Judge Huvelle gave plaintiff the entire universe of complaints that could possibly be evidence of prior acts of discrimination by Marshall or Reeves.

## C. Plaintiff's Complaints Regarding the AG's Responses to Interrogatories

Having concluded that Judge Huvelle's order should not be reconsidered, I turn to plaintiff's complaints as to the AG's responses to her first 15 interrogatories, other than her complaint that the AG should not be permitted to answer them in accordance with the restrictions ordered by Judge Huvelle.

*Interrogatory Number 3.* Plaintiff complains that she was not given the race of two of the employees disciplined by Catherine Reeves who I will call "Mr. F" and "Mr. S" to protect their privacy. In the interests of expedition, I will ask counsel for the AG to

call Mr. F and Mr. S and to provide plaintiff with their races.

*Interrogatory Number 4.* In a single word, plaintiff complains that the AG's response to this interrogatory was "unresponsive." I have reviewed the defendant's response, and finding it to be adequate, I will not compel any further response.

*Interrogatory Number 5.* Plaintiff complains that the AG's response does not include certain actions taken during February 1998. Again, in the interest of expedition, I will order the AG to supplement his response to include any DOJ attorney who was charged with misconduct by the entity the AG calls OARM during February 1998.

*Interrogatory Number 6.* Plaintiff complains that the AG has not identified the custodian of certain computer files, but the AG has indicated there is no custodian, *per se.* There is nothing more to compel.

*Interrogatory Number 11.* Plaintiff complains that the AG failed to adequately respond to this interrogatory and to produce all records regarding the investigation of whether a certain employee made a false statement when he stated that he faxed a document to the Merit Systems Protection Board. Although I find the AG's written response to be adequate, I will order that the defendant supplement its response to Interrogatory Number 11 with any documentation regarding the incident that was the subject of this inquiry.

*Interrogatory Number 14.* Plaintiff complains that the AG did not answer this interrogatory appropriately because the defendant did not provide information about whether complaints of discrimination were filed against certain persons. However, the AG did provide information about Marshall and Reeves, the individuals alleged to have proposed and imposed disciplinary action against plaintiff. As to the other individuals, plaintiff has made no showing that they were plaintiff's supervisors or otherwise within the chain of command. Absent a showing that the information she seeks is likely to lead to relevant evidence, I will not compel any further response from the AG.

**D. Plaintiff's Complaints Regarding the AG's Responses to Requests to Produce Documents**

In her submissions to the court, plaintiff refers to what she calls "plaintiff's positions." I will address each request in which she sets forth her position, assuming in her favor that a statement of position means that she is claiming that the defendant's response is inadequate.

*Request Number 2.* As to this request, plaintiff states only that "the Defendant has failed to produce the above referenced documents." *Addendum to Motion to Expand Scope of Discovery Order Dated July 20, 2004 and to Compel Answers to Interrogatories and Responses to Request for Production of Documents* at 8. The AG, however, explains that he has produced the documents. *Defendant's Opposition to Plaintiff's Motion to Expand Scope of Discovery Order Dated July 20, 2004 and to Compel Answers to Interrogatories and Responses to Requests for Production of Documents* at 26. Since I have no reason to disbelieve the AG's representation, and plaintiff offers no explanation for her assertion that the AG has not produced the documents, there is nothing to compel.

*Request Number 16.* This request seeks information about an allegation that Ms. H violated DEA standards of conduct in connection with a travel voucher. The AG objects on the grounds that this information is not within the scope of Judge Huvelle's order and that, in any event, information pertaining to Ms. H's travel vouchers is irrelevant. Def's. Ex. 3, at 18–19. Plaintiff does not show that Ms. H's conduct led to her being disciplined during the relevant time period or that the discipline imposed or the decision not to impose it was made by Reeves or Marshall. In the absence of such a showing, the AG's objection is legitimate. Additionally, as I have explained, the cases cited by plaintiff herself require a showing that the comparator and the plaintiff's circumstances were similar in all material respects and that they at least work within the same chain of command. In the absence of such a showing, it cannot be said that documents as to Ms. H's behavior are likely to lead to any evi-

dence relevant to plaintiff's claims or the defendant's defenses.

*Request Number 33.* In this request, plaintiff asked for documents that pertain to the arrest of DEA employees whom DEA did not investigate or discipline. The AG responded:

> Defendant objects to this request as unanswerable as stated. The absence of an investigation by OPR or other appropriately designated authority necessarily means the absence of an investigative file, which, in turn, means that the DEA's Board of Professional Conduct has no evidence upon which to determine charges.

Def's. Ex. 3, at 28.

Plaintiff charges that the AG should look beyond the files of the Board of Professional Conduct because responsive documents "may be in the files of other offices of DEA, such as the Office of Personnel, a supervisor's office, or even OPR." *Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion to Expand Scope of Discovery Order Dated July 20, 2004 and to Defendant's Opposition to Plaintiffs' Motion to Compel Answers to Interrogatories and Responses to Requests for Production* ("P's.Reply") at 19. Thus, plaintiff would have the AG search every supervisor's office anywhere in the United States for an indefinite period of time for an indication that a DEA employee was arrested but not investigated. As is first obvious, that exceeds the scope of the restriction imposed by Judge Huvelle by a remarkable margin. Furthermore, as just explained, at a minimum, plaintiff has to show that the persons not disciplined were at least within the chain of command in which she worked. This request clearly seeks information beyond the proper scope of discovery in this case, and no further response will be compelled.

■ *Request Number 38.* Plaintiff seeks documents pertaining to an investigation of her for having more than one Social Security number. But, the AG points out that such an allegation had nothing to do with the discipline that was imposed and that Marshall

and Reeves, the persons who either proposed that she be disciplined or imposed the discipline, were unaware of any such allegation. Def's Ex. 3, at 30. Given that this allegation had absolutely nothing to do with plaintiff's being disciplined, documents pertaining to it are unlikely to lead to relevant information, and I will not compel any greater response.

*Request Numbers 39, 47–50.* Plaintiff sought all documents that pertained to any allegation that an attorney in the DEA's Office of Chief Counsel committed an act of misconduct. The AG objected and referred to its objection to Request 19(1). Nevertheless, plaintiff represents that the AG objected to this request citing Judge Huvelle's order. P's. Reply at 20–21. Since the AG did not object to this request on that basis, plaintiff has indicated the wrong number of the request. In any event, whatever she was intending to object to, I have already disposed of her contention that the restriction that Judge Huvelle imposed on discovery should be reconsidered, and I will not compel any further response to this or any other request in which the AG has restricted his production to documents that fall within the scope of Judge Huvelle's order.

Plaintiff's objections to Request Numbers 47–50 all suffer from the same defect, overbreadth, and can be summarized briefly in the following chart:

| # 47 | Documents in effect since 1984 that set forth disciplinary procedures |
|---|---|
| # 48 | Documents in effect since 1985 pertaining to penalties to impose for acts of misconduct |
| # 49 | Documents in effect since 1989 pertaining to initiating or conducting investigations |
| # 50 | Documents in effect since 1987 pertaining to referrals by DEA to DOJ's Office of Inspector General or Office of Professional Responsibility |

Despite plaintiff's claim that she has "narrowed" her requests,[4] she still seeks documents that set forth procedures and penal-

---

4. *See Supplement to Motion to Expand Scope of Discovery Order Dated July 20, 2004 and to Compel Answers to Interrogatories and Responses to* Request for Production of Documents ("Supp. Mot.") at 8, 9.

ties that were in effect a decade before the pertinent period of time described in Judge Huvelle's order and before she was disciplined. Her request is patently beyond the scope of discovery as defined by Judge Huvelle and is utterly unlikely to lead to evidence that is relevant to her claim or the AG's defense.

*Request Number 51.* Plaintiff seeks documents pertaining to Mr. W who, the AG explains, was removed from federal service in 1996. The AG also indicates that neither Marshall nor Reeves proposed his removal or decided that he should be removed. Since this matter falls outside the scope of discovery ordered by Judge Huvelle, the AG's objection must be sustained. Plaintiff lamely argues that Judge Huvelle's order does not control because Mr. W complained of retaliation and not about the manner in which he was disciplined. Supp. Mot. at 13. But, only retaliation by either Marshall or Reeves in an earlier case could pertain to their motive and intent in the manner in which they disciplined plaintiff. Since they were not involved in any way in the case against Mr. W, the actions of others have nothing to do with plaintiff's claim or the AG's defense.

*Request Number 52.* In this request, plaintiff seeks documents pertaining to an incident in Albuquerque, New Mexico involving plaintiff and another man. The AG objected on the grounds that the request was beyond the scope of discovery as defined by Judge Huvelle and then stated, on information and belief, that the event occurred in the mid–1990's and that there were no documents responsive to this request. Plaintiff objects to the representation being made on information and belief. That point is well taken, but if this incident was not considered by Marshall and Reeves when Marshall proposed disciplining plaintiff and Reeves imposed it, documents pertaining to it are, as I have already indicated, not likely to lead to relevant evidence. The AG will therefore have to supplement its answer by indicating whether Marshall or Reeves considered this incident when plaintiff was disciplined.

**E. The AG's Invocation of the Work–Product Privilege**

The AG claimed that thirty responsive documents were privileged and submitted a privilege log. Plaintiff takes exception to some of the thirty documents. Mot. to Exp. and Comp. at 12. Given that there are only a small number of documents at issue, I will order the AG to produce them *in camera* and then rule on the privilege claims.

**F. The Deposition of Former Drug Enforcement Administrator Donnie Marshall**

■ As noted several times earlier, Donnie Marshall proposed that plaintiff be disciplined. A hearing concerning this matter was held before the Merit Systems Protection Board, during which Marshall testified under oath and was cross examined by the lawyer who represented plaintiff. Plaintiff now wants to depose Marshall, but the AG has moved that the court protect Marshall from being deposed.

A protective order may be issued to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c). Invoking this authority, the federal courts have protected government officials from being deposed unless the information sought from them cannot be obtained from any other source and they have some personal knowledge about the matter. *Lederman v. Giuliani,* No. 98 Civ. 2024, 2002 WL 31357810, at *2–3 (S.D.N.Y. Oct. 17, 2002); *Alexander v. FBI,* No. CIV. 96–2123, No. CIV. 97–1288, 1999 WL 270022, at *2 (D.D.C. Apr. 12, 1999). This use of the federal courts' power to issue protective orders is motivated by the obvious interference with their official duties that would occur if such officials could be deposed as easily as anyone else. *Alexander,* 1999 WL 270022, at *2. This difference in treatment has been extended to former public officials upon the theory that being subjected to depositions as to many matters that fell within their jurisdiction might deter capable people from entering public service. *United States v. Wal–Mart Stores,* No. CIV. A. PJM–01–CV–152, 2002 WL 562301, at *1–2 (D.Md. March 29, 2002).

The AG understandably points to Marshall's former testimony as establishing that

plaintiff cannot possibly show that the information she seeks to secure from him is unavailable from another source. Plaintiff already has it in the form of a transcript. But, it must be recalled that the discovery purpose of a deposition is different from the examination of a witness at a trial or hearing. Moreover, it must be remembered that this case does not involve judicial review of agency action upon an agreed-upon record. *Compare Cmty. Fed. Sav. & Loan Assoc. v. Fed. Home Loan Bank Bd.*, 96 F.R.D. 619, 621 (D.D.C.1983). A Title VII case is *de novo*,[5] irrespective of earlier proceedings before the EEOC or the Merit Systems Protection Board and Marshall, as a decision maker, has actual, personal knowledge of how plaintiff came to be disciplined and ultimately fired.

With that said, it must also be recalled that plaintiff could only claim that Marshall has information not otherwise available from another source (*i.e.*, the transcript of his testimony) if he is asked questions that were not already asked of or answered by him previously. I will therefore permit Marshall to be deposed for a four-hour period during which plaintiff may not ask him questions that were previously asked of him. I will order the AG to provide me with a transcript of his prior testimony, and I will remain available during the deposition by phone call. If the AG advises me that plaintiff is asking the same questions that were asked of Marshall during the hearing, and that proves to be true, I will stop the deposition immediately.

An Order accompanies this Memorandum Opinion.

### ORDER

In accordance with the Memorandum Opinion issued simultaneously herewith, it is, hereby, ORDERED that:

1. Plaintiff's *Motion to Expand Scope of Discovery Order Dated July 20, 2004 and to Compel Answers to Interrogatories and Responses to Request for Production of Documents* [# 43] is **DENIED in part and GRANTED in part**; and it is **FURTHER ORDERED** that

2. Plaintiff's *Supplement to Motion to Expand Scope of Discovery Order Dated July 20, 2004 and to Compel Answers to Interrogatories and Responses to Request for Production of Documents* [# 44] is **DENIED in part and GRANTED in part**; and it is **FURTHER ORDERED** that

3. *Defendant's Motion to Quash Subpoena and to Enter a Protective Order Vacating Plaintiff's Notice of Deposition to Former Drug Enforcement Administrator Donnie Marshall* [# 51] is **DENIED in part and GRANTED in part**, provided, however, that the deposition of Marshall may not take more than four hours and plaintiff may not ask Marshall any questions to which he previously replied under oath while testifying before the Merit Systems Protection Board; and it is **FURTHER ORDERED** that

4. *Defendant's Motion to Strike Plaintiff's Reply Memorandum to Plaintiff's Motion to Expand Scope of Discovery Dated July 20, 2004 and to Compel Answers to Interrogatories and Responses to Request for Production of Documents* [# 55] is **DENIED**; and it is **FURTHER ORDERED** that

5. *Plaintiff's Motion to Late File Plaintiff's Second Motion to Compel Documents* [# 58] is **GRANTED**; and it is **FURTHER ORDERED** that

6. The defendant shall produce for the Court's *in camera* inspection all documents it claims to be privileged within 7 days of the date of this Order; and it is **FURTHER ORDERED** that

7. The defendant shall supplement its discovery responses in accordance with the accompanying Memorandum Opinion within 7 days of the date of this Order.

**SO ORDERED.**

---

5. *Cf. Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 59–60, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).