24-2007-cv
*O'Neill v. Newburgh Enlarged City School District*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of June, two thousand twenty-five.

Present:
        EUNICE C. LEE,
        SARAH A. L. MERRIAM,
        MARIA ARAÚJO KAHN,
            *Circuit Judges.*

_____

CHRISTA O'NEILL,

        *Plaintiff-Appellant*,

        v.                                          No. 24-2007-cv

NEWBURGH ENLARGED CITY SCHOOL DISTRICT,

        *Defendant-Appellee*.

_____

| | |
|---|---|
| For Plaintiff-Appellant: | STEWART LEE KARLIN, Stewart Lee Karlin Law Group, P.C., New York, NY. |
| For Defendant-Appellee: | DEANNA L. COLLINS, Silverman & Associates, White Plains, NY. |

Appeal from a June 26, 2024 judgment of the United States District Court for the Southern District of New York (McCarthy, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Christa O'Neill appeals from the district court's grant of summary judgment in favor of her former employer, the Newburgh Enlarged City School District (the "District"), on her claim of race-based employment discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*

O'Neill, an African American woman, worked in the District as a tenured Speech/Language Pathologist ("SLP") between March 19, 2003 and May 10, 2022. In that role, she was required to provide therapy services, write and update Individualized Education Plan goals for students with mandated speech therapy on her caseload, and keep ongoing records. These records included student attendance and speech language service information, which the District used to track student progress and bill Medicaid for services rendered. During the relevant period, O'Neill was primarily assigned to South Middle School ("SMS") but also provided therapy services at a nearby school two to three days per week, and at both schools, she was the only assigned SLP. O'Neill was directly supervised by the principal of SMS, Chanté Brooks, an African American woman, and the vice principal of SMS, Vincent Brancato, a white man.

During the 2018–2019 school year, the District filed charges against O'Neill under New York Education Law § 3020-a, alleging that she had failed to document over 2,000 speech and language therapy sessions between 2016 and 2018. The parties agreed to settle those charges pursuant to a stipulation (the "Stipulation"), which required that O'Neill: (1) admit that she failed

2

to accurately document services for certain students on her caseload; (2) pay a $40,000 fine; and (3) agree to a Last Chance Provision, which stated that, unless O'Neill cured any alleged violation within 45 days of receiving a notice from the District, she would be terminated if she (a) engaged in neglect of duty "substantially similar" to the charges in the instant case, and/or (b) failed to deliver or contemporaneously document services prior to the end of the 2021–2022 school year. App'x at 121, 124.

In early 2021, the District discovered that O'Neill had again failed to keep up-to-date records and that hundreds of sessions from the 2020–2021 school year remained undocumented. On April 5, 2021, the District gave O'Neill a 45-day notice, pursuant to the Last Chance Provision of the Stipulation, requiring her to make the outstanding records current by the end of the 45-day period. After O'Neill failed to fully update the records, the District filed formal charges against her. On May 9, 2022, a hearing officer found that O'Neill had failed to keep her records current during the 2020–2021 school year and that she had failed to cure this issue within the allotted 45-day period. Consequently, O'Neill was terminated under the Last Chance Provision, effective May 10, 2022.

O'Neill challenged her termination in state court, claiming that the hearing officer's decision recommending her termination was arbitrary and capricious. *See O'Neill v. Newburgh Enlarged City Sch. Dist.*, Index No. EF002886-2022 (N.Y. Sup. Ct. May 18, 2022). The state court agreed, finding, *inter alia*, that enforcing the terms of the Last Chance Provision as written was unfair given the extraordinary circumstances of the COVID-19 pandemic, which could not have been foreseen at the time of the Stipulation. The state court therefore vacated the hearing officer's decision.

3

In this suit, O'Neill alleges that the District had a history of treating her differently than her similarly-situated peers on account of her race, a trend that was exacerbated by workload increases and other challenges arising out of the COVID-19 pandemic. Viewed in that context, she contends that her inconsistent recordkeeping was merely a pretext to fire her on the basis of her race.

We assume the parties' familiarity with the remaining underlying facts, the procedural history, and the issues on appeal.

*          *          *

"We review a district court's grant of summary judgment *de novo*, 'resolving all ambiguities and drawing all permissible inferences in favor of the nonmoving party.'" *Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 326 (2d Cir. 2020) (quoting *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 83 (2d Cir. 2020)). A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

When assessing a claim of race discrimination under Title VII, we apply the three-step *McDonnell Douglas* burden-shifting framework. *See Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (applying *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to Title VII claims). At step one, a plaintiff must "establish a prima facie case of discrimination by showing that (1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Bart v. Golub Corp.*, 96 F.4th 566, 570 (2d Cir.) (internal quotation marks omitted), *cert. denied sub nom. The Golub Corp. v. Elaine Bart*, 145 S. Ct. 173 (2024). If "the

4

plaintiff has established a prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its adverse action" at step two. *Id.* (internal quotation marks omitted). If the employer articulates such a reason, then the burden shifts back to the plaintiff to show, at step three, either "that the employer's stated justification for its adverse action was nothing but a pretext for discrimination" or "that, even if the employer had mixed motives, the plaintiff's membership in a protected class was at least one motivating factor in the employer's adverse action." *Id.* at 567.

Here, because O'Neill has failed to meet even the "minimal" burden required to establish a prima facie case of race discrimination at step one, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000), her claim must fail. Both parties agree that O'Neill is a member of a protected class, that she was qualified for her position, and that she suffered an adverse employment action. They dispute only whether the circumstances of her termination give rise to an inference of discrimination. We conclude that they do not.

"To succeed on a Title VII disparate treatment claim, a plaintiff must prove discrimination either by direct evidence of intent to discriminate or, more commonly, by indirectly showing circumstances giving rise to an inference of discrimination." *Bart*, 96 F.4th at 569 (internal quotation marks omitted). "A showing of disparate treatment—that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (internal quotation marks omitted). In order to establish disparate treatment, a plaintiff must identify a similarly situated employee who was "subject to the same performance evaluation and

5

discipline standards" and "engaged in comparable conduct." *Graham*, 230 F.3d at 40. That comparator must be sufficiently similar to the plaintiff "to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001).

O'Neill has not established a prima facie case of discrimination based on disparate treatment because she has not identified any other similarly situated employee who engaged in similar conduct—failing to contemporaneously document services—and was not terminated. *See Graham*, 230 F.3d at 40 (explaining that a showing of disparate treatment "requires plaintiff to show that similarly situated employees who went undisciplined engaged in comparable conduct"). Because the record is devoid of any direct evidence of discrimination, her failure to identify an appropriate comparator is fatal to her claim.

O'Neill argues that we may nonetheless infer racial animus based on the following circumstances surrounding her termination: (1) Principal Brooks's testimony that she believed she had been discriminated against by the District on account of her race, (2) the disproportionate increase in O'Neill's workload during the 2020–2021 school year, due to the COVID-19 pandemic, and (3) the District's history of assigning O'Neill a disproportionately high workload and refusing to provide her with privileges and accommodations with respect to her work schedule and conditions. We disagree.

First, the mere fact that Brooks testified that she had experienced race-based discrimination during her time in the District cannot sustain O'Neill's claim. In her deposition, Brooks explained that she believed she had been discriminated against by the District, based on the "[l]ack of increase of [her] pay according to a scale of others" and the "[i]ncrease in [her] responsibilities

6

compared to others." App'x at 765. Brooks did not cite any evidence to support these allegations, but even crediting them as true, they cannot support O'Neill's claim. Brooks did not express any opinion that O'Neill had been subjected to similar treatment during her tenure in the District. Moreover, O'Neill has not claimed that any of the individuals responsible for Brooks's alleged disparate treatment had any supervisory or other role with respect to her own employment. In fact, as principal of SMS, Brooks herself was one of O'Neill's two direct supervisors and was the individual who initiated the disciplinary proceedings against O'Neill, which eventually led to her termination. Brooks's own alleged experiences of race-based discrimination in the District simply cannot support an inference that Brooks herself or others in the District discriminated against O'Neill on the basis of her race.[1]

Second, O'Neill claims that during the 2020–2021 school year, unlike similarly situated white SLPs at other schools within the District, she was required to cover classes when teachers were absent, perform hall duty and other supervisory responsibilities, mentor staff, and document student attendance and services performed in two different systems. Taken together, O'Neill contends that these extra duties "doubled" her daily workload, making it impossible to keep up with recordkeeping requirements. Appellant's Br. at 55. But many of these "extra duties," *id*.

---

[1] To the extent that O'Neill relies on a "cat's paw" theory of liability to rescue her claim, that argument is unavailing. The cat's paw theory was developed to address the "situation in which an employee is fired or subjected to some other adverse employment action by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action." *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 272 (2d Cir. 2016). In order to proceed on such a theory, a plaintiff must show that "the employer's own negligence gives effect to the employee's animus and causes the [plaintiff] to suffer an adverse employment action." *Id.* at 276. O'Neill suggests that Vice Principal Brancato may have manipulated Brooks into initiating the disciplinary process against O'Neill. Thus, even if Brooks herself had no discriminatory animus, she may be held liable for Brancato's discriminatory intent. This argument fails because the record does not contain evidence of Brancato's alleged discriminatory motive, nor Brooks's negligence.

7

at 16, resulted from school-specific policies, and thus SLPs at other schools within the District are not appropriate comparators. *See McGuinness*, 263 F.3d at 54 (explaining that a plaintiff cannot "establish the minimal prima facie case by making reference to the disparate treatment of other employees" where "there [a]re so many distinctions between the plaintiff's situation and theirs that the defendant's treatment of those employees ha[s] no logical relevance to the plaintiff's claims"); *Graham*, 230 F.3d at 40 (explaining that a comparator must be "subject to the same performance evaluation . . . standards"). Moreover, O'Neill has not addressed the substantial record evidence showing that other service providers at her school—outside of her protected class—were also required to undertake each of these additional duties.[2] Given this evidence, we cannot conclude that O'Neill's additional duties evidence a pattern of racial discrimination.

Third, most of O'Neill's complaints regarding her caseload, transfers, therapy room, and former supervisor arose prior to 2019, and have therefore been waived as a result of the Stipulation. *See* Stipulation of Settlement ¶ 15, App'x 125–26 ("[T]he Employee hereby waives any and all claims that she might otherwise have asserted through the date of this Agreement."). Her remaining claim based on the denial of her request for a schedule accommodation during the 2020–2021 school year fails because she has not addressed the record evidence showing that no full-time employee within the District was permitted to alter their work schedule for childcare purposes.

\* \* \*

---

[2] That none of those providers was an SLP is not significant, given that O'Neill was the only SLP at both schools to which she was assigned.

We have considered O'Neill's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

9