Susan Rochelle AUGUSTUS, Plaintiff,

v.

MSG METRO CHANNEL, Defendant.

No. 00 Civ.4981 LAK.

United States District Court,
S.D. New York.

Aug. 27, 2002.

Susan Rochelle Augustus, Plaintiff pro se.

Amber Kagan, Morgan, Lewis & Bockius LLP, New York City, David B. Ritter, Altheimer & Gray, Chicago, IL, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff Susan Augustus brought this lawsuit *pro se* against her former employer, Metro Channels L.L.C. ("Metro"),[1] alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.[2] Augustus, an African–American woman, claims that Metro subjected her to unequal terms and conditions of employment and terminated her based on her race and gender. The case was

referred to Magistrate Judge Ronald L. Ellis. On Metro's motion for summary judgment, the magistrate judge issued a Report and Recommendation (the "Report") on May 15, 2002,[3] familiarity with which is assumed, recommending dismissal of the complaint. Plaintiff filed timely objections.

The magistrate judge held that plaintiff had failed to establish a *prima facie* case of employment discrimination on her termination claim because she was not fired in circumstances giving rise to an inference of discrimination. In the alternative, he concluded that plaintiff had failed to adduce evidence sufficient to permit a trier of fact to find that Metro's proffered non-discriminatory reason for her termination was a pretext for unlawful discrimination. He held also that she had failed to establish a *prima facie* case of discrimination on her unequal terms and conditions claim. Specifically, he determined that neither unequal access to car service nor unequal access to the assistance of an intern constituted an adverse employment action for purposes of Title VII. He further concluded that the pay differential between plaintiff and her co-worker, Paul Jones, constituted an adverse employment action, but that the circumstances of this disparity did not give rise to an inference of discrimination. Having considered plaintiff's objections, the Court agrees with the magistrate judge's conclusions and concurs in his rationale except as specifically addressed below.

### I. Discussion

#### A. Termination Claim: Inference of Discrimination

██ In analyzing whether plaintiff had presented evidence to support her claim

---

**1.** Metro is known also as MSG Metro and Rainbow Media.

**2.** 42 U.S.C. § 2000e *et seq.*

**3.** The Report provides a thorough recitation of the relevant evidence adduced by the parties.

that she was treated differently than Jones with respect to her termination, the magistrate judge failed to refer to one relevant piece of evidence. Augustus testified that, before her meeting with Richard Collier on September 11, 1998, Jones met with Collier as well.[4] According to plaintiff, Jones came out of the meeting and told her that he also had been warned about producers feeling that he was unapproachable.[5] Augustus conceded that she was not in the meeting and does not know what was said during it.[6] The Court notes this evidence only for the sake of completeness, however, because it does not undermine the magistrate judge's conclusion that there was no "'objectively identifiable basis for comparability'" between the two employees' alleged misconduct.[7] Augustus allegedly was terminated for tardiness and poor research skills, as well as her attitude, and the testimony regarding Jones's meeting with Collier does nothing to establish that Jones had problems in all of these areas. Moreover, plaintiff adduced no competent evidence that his purported attitude problem was of comparable seriousness with hers. Accordingly, the magistrate judge correctly concluded that she failed to adduce evidence sufficient to create a genuine issue of fact regarding whether she was treated differently from a similarly situated co-worker with respect to her termination. Plaintiff's objections on this issue are overruled.

## B. Termination Claim: Legitimate, Non-discriminatory Reason for Termination

■ The bulk of plaintiff's objections dispute the magistrate judge's conclusion that "Metro has proffered evidence establishing a legitimate, nondiscriminatory reason for terminating her, namely unsatisfactory work performance and attitude problems."[8] The essence of her contention is that Metro never provided her in discovery with specific documentation to support its proffered reason.

This argument profoundly misconstrues the parties' respective burdens under the *McDonnell Douglas* framework. Metro need only have articulated and offered some admissible evidence in support of a legitimate, non-discriminatory reason for plaintiff's termination in order to shift the burden back to her to prove that discrimination was the real reason for her discharge.[9] Metro met its burden by introducing the declarations of Richard Collier, Elizabeth Hummer, Dan Moran, Mark Gross, and Charles Lewis, which detail her alleged performance and attitude problems. Plaintiff could not satisfy her burden merely by claiming that Metro should have provided more specific documenta-

---

4. Augustus Dep. 131–33.

5. *Id.* Jones's statement is admissible as non-hearsay pursuant to FED.R.EVID. 801(d)(2)(D) because it is a statement by Metro's agent concerning a matter within the scope of his employment during the existence of the relationship.

6. Augustus Dep. 132–33.

7. *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir.2000) (citing *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 96 (2d Cir. 1999)).

8. Report, at 15; *see* Pl. Obj., at 1–4.

9. *See Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir.2001); *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir.2000); *Schnabel v. Abramson*, 232 F.3d 83, 88 (2d Cir.2000); *Evans v. Port Authority of N.Y. & N.J.*, 192 F.Supp.2d 247, 265 (S.D.N.Y.2002); *see also Tappe v. Alliance Capital Mgmt., L.P.*, 198 F.Supp.2d 368, 374 (S.D.N.Y.2001) ("[B]ecause the defendant only bears a burden of production, the defendant does not need to persuade the court that it was, in fact, motivated by the proffered reasons.").

tion. And plaintiff's assertion that Metro never informed her of the alleged performance problems prior to her termination is flatly contradicted by her own deposition testimony.[10] In any case, the lack of an elaborate paper trail is not surprising given the short duration of plaintiff's employment with Metro. Plaintiff's objections on this issue are overruled.

### C. Termination Claim: Discrimination Vel Non

■ As the magistrate judge correctly noted, Augustus could not carry her burden of establishing discrimination *vel non*[11] by "parsing the details of selected incidents, generally disputing supervisors' assessments, and providing her own contrary appraisal of her work."[12] A number of her objections are devoted to such conclusory statements disputing Metro's reasons for firing her rather than pointing to evidence showing them to be pretextual. Plaintiff, however, raises one point not addressed by the magistrate judge.

Plaintiff contends that Richard Collier told her that one of the reasons she was being fired was that Cupid's Corner, the segment she was producing on Fridays, no longer would be airing and that the segment "continued to air for several months after she was terminated."[13] But plaintiff does not cite to, nor has the Court been able to locate, any record evidence regarding when Metro discontinued the Cupid's Corner segment. Moreover, even assuming plaintiff had adduced evidence to create a genuine issue of fact concerning whether this particular explanation was false, the Court would be faced with one of those instances in which a finding of pretext nevertheless would not permit an ultimate finding of discrimination.[14] In the circumstances, given the utter lack of evidence regarding racial or gender animus and the plaintiff's failure to rebut Metro's contention that it fired her for performance and attitude problems, it would not be reasonable for a jury to conclude that Collier lied to Augustus about discontinuing the segment in order to cover up discrimination.[15] Rather, the rational conclusion would be that he gave her this explanation in order to soften the blow of her termination by adding a reason for it that was not personal to her.

---

10. *See* Augustus Dep. 129–31 (admitting that she met with Richard Collier "a week or so before [she] was fired" to discuss attitude and performance problems).

11. *See, e.g., Byrnie*, 243 F.3d at 102 ("If the employer offers, via admissible evidence, a justification of its action which, if believed by a reasonable trier of fact, would allow a finding of no unlawful discrimination, then the *McDonnell Douglas* framework—with its presumptions and burdens disappear[s], and the sole remaining issue [is] 'discrimination *vel non.'*") (alterations in original and internal quotation marks omitted (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000))).

12. Report, at 16 (quoting *Taylor v. Polygram Records*, No. 94 Civ. 7689(CSH), 1999 WL 124456, at *10 (S.D.N.Y. Mar.8, 1999)).

13. Pl. Obj., at 2.

14. *See, e.g., Naftchi v. N.Y. Univ.*, 14 F.Supp.2d 473, 483 (S.D.N.Y.1998); *see also Reeves*, 530 U.S. at 146–148, 120 S.Ct. 2097.

15. Discrimination would be an especially unlikely explanation given that Collier made the decision to hire plaintiff only a few months earlier. *See Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir.1997) ("[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to [that person] an invidious motivation that would be inconsistent with the decision to hire. This is especially so when the firing has occurred only a short time after the hiring."), *cert. denied*, 525 U.S. 936, 119 S.Ct. 349, 142 L.Ed.2d 288 (1998).

Plaintiff's objections on this issue are overruled.

### D. Unequal Terms and Conditions Claim

■ The magistrate judge concluded that plaintiff had failed to establish the fourth prong of her *prima facie* case on her unequal terms and conditions claim, despite the fact that she adduced evidence demonstrating that Jones, a white male co-worker, was paid more than she even though he performed the same work.[16] He cited *Conigliaro v. Horace Mann School*[17] for the proposition that "Augustus's sole reliance on evidence that Jones was paid more than she is insufficient to establish discriminatory animus."[18] The *Conigliaro* court cited *Tomka v. Seiler Corp.*[19] for nearly the same proposition.[20]

In *Tomka*, the Second Circuit dismissed a Title VII claim where the plaintiff's only evidence of intentional gender-based wage discrimination was that three male employees with the same or similar duties were paid more than she was.[21] The panel stated that the mere fact that the plaintiff was paid less than the men "do[es] not support an inference that [the employer] acted with a discriminatory intent."[22]

While this holding supports the magistrate judge's conclusion, there is some tension between it and the Second Circuit's more recent decision in *McGuinness v. Lincoln Hall.*[23] There, the panel held that the white female plaintiff, who alleged both race and sex discrimination, had satisfied the fourth prong of her *prima facie* case when she adduced evidence sufficient to permit a finding that her employer offered her "a different and less desirable severance package (one which involved less money) than it offered to plaintiff's colleague ..., a black man who like plaintiff was an executive-level employee, and who was discharged two days after the plaintiff."[24] Although *McGuinness* involved a disparity in severance packages rather than salaries, both are forms of compensation, and the Court sees no reason to treat the two differently for purposes of analyzing inferences of discrimination. Fortunately, the Court need not resolve this conflict. Even assuming plaintiff had made out a *prima facie* case, Metro articulated a legitimate, non-discriminatory reason for paying Jones more than her, and she adduced no evidence suggesting that the real reason for the pay disparity was discrimination.

Richard Collier explained that Jones was paid slightly more than Augustus because he was working elsewhere as a production assistant when Metro interviewed him and negotiated a competitive wage, whereas she had been unemployed at the time and accepted Collier's initial offer.[25] Plaintiff adduced no evidence either challenging this explanation or suggesting that discrimination was the real reason for the

---

16.  *See* Report, at 18.

17.  No. 95 Civ. 3555(CSH), 2000 WL 45439 (Jan. 19, 2000).

18.  Report, at 18.

19.  66 F.3d 1295 (2d Cir.1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

20.  *Conigliaro,* 2000 WL 45439, at *13.

21.  *See Tomka,* 66 F.3d at 1313; *see also id.* at 1311 (concluding that there was fact issue regarding whether the male employees performed substantially equal work as plaintiff).

22.  *Id.* at 1313.

23.  263 F.3d 49 (2d Cir.2001).

24.  *Id.* at 53, *see id.* at 54–55.

25.  Collier Decl. ¶ 31.

pay disparity.[26] Accordingly, there is no genuine issue of fact regarding discrimination *vel non,* and Metro is entitled to summary judgment dismissing plaintiff's unequal terms and conditions claim.

The Court has considered the balance of plaintiff's objections relating to her Title VII claims and finds them unpersuasive. They therefore are overruled as well.

### E. Equal Pay Act Claim

The magistrate judge declined to consider arguments by plaintiff invoking the Equal Pay Act (the "EPA") and opined that it would be untimely for her to seek to amend the complaint in order to add an EPA claim because of the three year statute of limitations.[27] The Court respectfully differs from the magistrate judge on this issue.

Augustus did not include an EPA claim in her complaint. She used a form complaint provided by the *Pro Se* Office that required her to choose among three possible employment discrimination actions—under Title VII, under the ADEA, or under the ADA. Faced with these choices, she quite reasonably chose to assert a claim under Title VII. Moreover, plaintiff did not discover that Metro paid Jones more than her until discovery had commenced in this case.

Although plaintiff never moved to amend her complaint to add an EPA claim, she argued before the magistrate judge that the disparity in pay between her and Jones was a "clear violation" of the EPA[28] and attached a copy of it to her papers in opposition to summary judgment.[29] Additionally, she questioned the magistrate judge's determination of the statute of limitations issue in her objections and asked this Court to allow her to proceed under the EPA.[30]

"Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training."[31] While the right " 'does not exempt a party from compliance with relevant rules of procedural and substantive law,' it should not be impaired by harsh application of technical rules."[32] Accordingly, "[t]rial courts have been directed to read *pro se* papers liberally, and to allow amendment of *pro se* complaints fairly freely."[33] In all the circumstances and in light of this obligation, the Court construes plaintiff's papers in opposition to summary judgment and its objections to the Report as a motion to amend the complaint to add an EPA claim.[34]

---

**26.** *Cf. McGuinness,* 263 F.3d at 55 (genuine issue of fact existed where plaintiff pointed to record evidence contradicting defendant's explanation that male employee had negotiated for his severance and hired counsel who threatened to bring legal claims).

**27.** *See* Report, at 18 n. 2.

**28.** Pl. Resp., at 3 (DI 19).

**29.** Pl. Exhibits, Ex. E.

**30.** Pl. Obj., at 5–6.

**31.** *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983).

**32.** *Id.* (quoting *Birl v. Estelle,* 660 F.2d 592, 593 (5th Cir.1981)).

**33.** *Id.* (citations and internal quotation marks omitted); *see also McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (reviewing courts should read *pro se* pleadings liberally and interpret them "to raise the strongest arguments they suggest"); *Sank v. City Univ.,* No. 94 Civ. 0253(RWS), 2002 WL 1792922, at *2 (S.D.N.Y. Aug.2, 2002) (reasonable allowances are required).

**34.** *See, e.g., Cooper v. Sheriff, Lubbock County, Tex.,* 929 F.2d 1078, 1082 (5th Cir.1991) (magistrate judge should have construed plaintiff's "reply" to defendant's amended an-

Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." [35] "*Pro se* plaintiffs, especially in civil rights suits, are freely granted leave to amend their original complaint." [36] The decision whether to grant leave to amend, however, ultimately is within the sound discretion of the district court. [37] "The most common reasons [why] courts have denied leave to amend are that amendment will result in undue prejudice to the other parties, it is unduly delayed, or it is offered in bad faith or for a dilatory purpose. Generally, unexcused delay in seeking amendment will not bar it if no prejudice will ensue to the other parties." [38]

While discovery is complete and the action has progressed to the summary judgment stage, it would not be accurate to characterize Augustus's failure to assert her EPA claim up to this point as *undue delay*. Amendment at this stage would not violate any scheduling order, and it appears from her papers that she was unaware that amendment was necessary in order to assert the claim. Moreover, amendment is meant to "enable[ ] a party 'to assert matters that were overlooked or unknown .. at the time ... [of the] original complaint,'" [39] which aptly describes the situation here. Metro does not dispute that Augustus neither knew nor should have known of the pay disparity at the time she filed the original complaint. Nor would amendment unreasonably delay resolution of the dispute: the EPA claim arises out of the same set of operative facts as the original complaint, and therefore Metro will not require new discovery to defend against it. [40]

Furthermore, there is no indication that Metro would be prejudiced unduly by amendment. The EPA and the Title VII claims have similar elements and would necessitate more or less the same proof at

swer as motion to amend the complaint); *Gray ex rel. Furia Org., Inc. v. Furia Org., Inc.*, 896 F.Supp. 144, 147 (S.D.N.Y.1995) (construing argument in papers in opposition to motion for summary judgment as motion to amend the complaint); *Respass v. New York City Police Dep't*, 852 F.Supp. 173, 176 (E.D.N.Y.1994) (construing arguments in reply memorandum as part of motion to amend the complaint); *see also Richardson v. United States*, 193 F.3d 545, 548 (D.C.Cir.1999) (district court abused discretion in refusing to consider reply to motion to dismiss as amendment of original complaint); *Pearson v. Gatto*, 933 F.2d 521, 527 (7th Cir.1991) (district court should have construed letter to court from *pro se* plaintiff to be amended complaint); *Smith v. O'Connor*, 901 F.Supp. 644, 646 (S.D.N.Y.1995) (construing "Notice of Motion Amended Complaint" as opposition to defendant's motion to dismiss and cross-motion to amend complaint).

**35.** Fed. R. Civ. P. 15(a).

**36.** *Gill v. Gilder*, No. 95 Civ. 7933(RWS), 1997 WL 53187, at *4 (S.D.N.Y. Feb.10, 1997)

(internal quotation marks omitted); *see Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984).

**37.** *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir.1995).

**38.** *Green v. Dep't of Correction*, No. 97 Civ. 6652, 1999 WL 710782, at *2 (S.D.N.Y. Sept.13, 1999) (internal quotation marks omitted); *see also Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234–35 (2d Cir. 1995) ("Delay alone unaccompanied by such a 'declared reason' does not usually warrant denial of leave to amend."); *Green*, 1999 WL 710782, at *3 (noting that courts generally permit amendment even after summary judgment motions are filed) (citing cases).

**39.** *Hanlin v. Mitchelson*, 794 F.2d 834, 840 (2d Cir.1986) (quoting *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 703 (2d Cir. 1985), *cert. denied*, 475 U.S. 1067, 106 S.Ct. 1381, 89 L.Ed.2d 607 (1986)).

**40.** *See id.* at 841; *Green*, 1999 WL 710782, at *2.

trial.[41] And defendant has been on notice for some time now. that plaintiff intended to raise an EPA claim. Indeed, defendant already has begun formulating arguments that the pay disparity was based on a factor or factors "other than sex." [42]

Finally, amendment would not be futile [43] on either substantive or statute of limitations grounds. The circumstances suggest that plaintiff easily can satisfy her *prima facie* case under the EPA—Metro does not dispute that it paid Jones more than Augustus despite the fact that they performed equal work on jobs requiring equal skill, effort, and responsibility, and in similar working conditions.[44] Consequently, and in contrast to the Title VII claims analyzed above, the burden of persuasion would be on Metro to establish that the pay differential was based on a "factor other than sex" and that the gender neutral factor was adopted for legitimate business reasons.[45] Moreover, when an employer argues that it paid a male employee more in order to induce him away from other employment, it may be required to adduce evidence that the male employee at issue was " 'the best person available for the job' " and that "a higher salary was necessary to hire him." ' [46] It is not apparent that Metro's proffer of evidence in support of summary judgment on the Title VII claims would be sufficient to trigger the EPA affirmative defense.

As for the statute of limitations, an amended complaint likely would relate back to the original complaint because the factual predicates of plaintiff's EPA claim (*i.e.*, her employment at Metro and the alleged differences in Metro's treatment of her and Jones) arguably are the same as those underpinning her Title VII claims.[47] The original complaint was filed on July 7, 2000, less than two years after plaintiff received her last pay check. The amendment therefore would be timely under the Equal Pay Act, at least with respect to those paychecks received after July 7, 1998, even if plaintiff could not establish that Metro's violation was willful.[48] The magistrate judge thus erred when he concluded that amendment would be futile because of the EPA's statute of limitations.[49]

41. See *Tomka*, 66 F.3d at 1313.

42. See Def. Resp. to Pl. Obj., at 4 (citing EPA cases regarding affirmative defense based on "factors other than sex").

43. An amendment is not futile if there are "colorable grounds for relief" on the new claim. See *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 783 (2d Cir.1984).

44. See *Ryduchowski v. Port Authority*, 203 F.3d 135, 142 (2d Cir.) (three prongs of EPA *prima facie* case), *cert. denied*, 530 U.S. 1276, 120 S.Ct. 2743, 147 L.Ed.2d 1007 (2000).

45. See *Belfi v. Prendergast*, 191 F.3d 129, 136 (2d Cir.1999); *Sobol v. Kidder, Peabody & Co.*, 49 F.Supp.2d 208, 220 (S.D.N.Y.1999); *see also Tomka*, 66 F.3d at 1310, 1312.

46. See *Mazzella v. RCA Global Communications, Inc.*, 642 F.Supp. 1531, 1552 (S.D.N.Y. 1986) (quoting *Horner v. Mary Inst.*, 613 F.2d 706, 714 (8th Cir.1980)), *aff'd*, 814 F.2d 653 (2d Cir.1987) (table).

47. See FED. R. CIV P. 15(c)(2) (amended pleading relates back if "the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading").

48. See *Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 118–19 (2d Cir.1997); *Erickson v. N.Y. Law School*, 585 F.Supp. 209, 213 (S.D.N.Y.1984) ("Under the Act, a separate claim accrues each time the aggrieved employee receives a paycheck reflecting discriminatory wages.").

49. Besides holding that amendment would not be futile, the Court expresses no definitive opinion on the statute of limitations issue, as this issue will be ripe when and if Metro

In sum, leave to amend is warranted in the circumstances.

## II. Conclusion

For the reasons set forth by the magistrate judge in the Report, as modified by the above analysis, defendant's motion for summary judgment is granted, and plaintiff's Title VII claims are dismissed. Plaintiff's motion for leave to amend the complaint to add an EPA claim is granted.

SO ORDERED.

attacks the amended complaint, if any, filed by plaintiff.