Klassik **NELSON**, Plaintiff,

v.

**JPMORGAN CHASE BANK, N.A., Chase Home Finance, LLC, Funding Unlimited, Inc., Benny Nektolov, broker, Defendants.**

No. 07–CV–2055 (RRM)(ARL).

United States District Court,
E.D. New York.

March 22, 2009.

Klassik Nelson, Brooklyn, NY, pro se.

Peter R. Bonchonsky, Bonchonsky & Zaino, LLP, Garden City, NY, Albert Y. Dayan, Law Office of Mr. Albert Y. Dayan, Queens, NY, Alan Blumen, Alan Blumen, P.C., Brooklyn, NY, for Defendants.

## ORDER

MAUSKOPF, District Judge.

*Pro se* Plaintiff Klassik Nelson commences this action pursuant to the Truth in Lending Act of 1968 ("TILA"), 15 U.S.C. §§ 1601 *et seq.;* the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. §§ 1639; and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.* Nelson claims various violations of these statutes in connection with the issuance and closing of her Chase mortgage (the "Chase Mortgage") and Chase home equity line of credit (the "HELOC" or "Home Equity Line"). Defendants JPMorgan Chase Bank, N.A. and Chase Home Finance, LLC (collectively, "Chase"), as well as Benny Nektolov and Funding Unlimited, Inc., move for summary judgment on all claims.

On March 25, 2009, the matter was referred to Magistrate Judge Arlene R. Lindsay for a Report and Recommenda-

tion. Now before this Court are: the Report and Recommendation, dated July 17, 2009 (docket no. 68) (the "Initial R & R"); the Amended Report and Recommendation, dated August 31, 2009 (the "Amended R & R")[1] (docket no. 81); Nelson's timely Objections to the Initial R & R, filed July 31, 2009 (docket no. 74); Nelson's Supplemental Affidavit in Opposition to Summary Judgment, filed August 13, 2009 (docket no. 79); Nelson's timely Objections to the Amended R & R, filed September 21, 2009 (docket no. 85); Chase's Response to Nelson's Objections to the Amended R & R, filed November 22, 2009 (docket no. 87); and the Reply submissions of Defendants Nektolov and Funding Unlimited, Inc., filed November 22, 2009 and November 28, 2009, respectively (docket nos. 88 & 89).

## STANDARD OF REVIEW

Rule 72 of the Federal Rules of Civil Procedure permits magistrate judges to conduct proceedings on dispositive pretrial matters without the consent of the parties. Fed.R.Civ.P. 72(b). If any party timely serves and files written objections to a magistrate judge's report and recommendation on a dispositive motion, the district court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed.R.Civ.P. 72(b)(3). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The district court is not required to review the factual or legal con-

clusions of the magistrate judge as to those portions of a report and recommendation to which no objections are addressed, *see Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), and instead reviews those portions for clear error, *see Covey v. Simonton,* 481 F.Supp.2d 224, 226 (E.D.N.Y.2007).

## DISCUSSION

In light of Nelson's objections to the Initial R & R and the Amended R & R (docket nos. 74 & 85) (referred to collectively as the "Objections"), and as discussed more fully in Section I, *infra,* this Court has undertaken *de novo* review of the issues as required under 28 U.S.C. § 636(b)(1). *See also* Fed.R.Civ.P. 72(b)(3). This Court, substantially concurring with the Magistrate Judge's Initial R & R and Amended R & R, hereby adopts her recommendations and the TILA, HOEPA, and RESPA claims evident on the face of Nelson's Complaint are DISMISSED.

As discussed more fully in Section II, *infra,* however, this Court, in due deference to Nelson's status as a *pro se* litigant, addresses certain skeletal claims elaborated upon in either or both her opposition to summary judgment (see docket no. 53–6) or her Objections, or raised for the first time therein. For the reasons discussed below, the Court shall construe Nelson's submissions as a motion for leave to amend her pleadings. *See Augustus v. MSG Metro Channel,* 217 F.Supp.2d 458,

---

**1.** Due to Defendant Chase's apparent office failure, certain portions of key exhibits were not provided to the Magistrate Judge and were therefore not considered in the Magistrate Judge's initial analysis of Nelson's TILA claim, as set forth a Report and Recommendation dated July 17, 2009. (Docket No. 68). Having subsequently been provided with complete copies of such exhibits, the Magistrate Judge issued an Amended Report and Recommendation, dated August 31, 2009, which contained a revised analysis and modified recommendation only as to the TILA claim. This Court has reviewed the relevant portions of the initial Report and Recommendation, as well as the relevant modification as set forth in the Amended Report and Recommendation.

464–65 (S.D.N.Y.2002) (construing as a motion to amend, pro se arguments asserted in opposition to summary judgment and objections to report and recommendation).

## I.

## ADOPTION OF THE REPORTS & RECOMMENDATIONS

As a threshold matter, this Court concurs that viewing the facts in the light most favorable to the Nelson, HOEPA and RESPA are irrelevant and inapplicable as to all Defendants. Accordingly, those claims are hereby dismissed. Further, this Court finds that the requirements of TILA, which provisions are applicable only as to Defendant Chase, have adequately been met. That claim is therefore also dismissed.

### A. *HOEPA*

This Court concurs with Magistrate Judge Lindsay's determination that HOEPA is inapplicable. For HOEPA to apply, a mortgage loan must satisfy the following five requirements:

First, the mortgage loan must be a "consumer credit transaction," as defined in 15 U.S.C. § 1602(h). Second, the mortgage loan must be a consumer credit transaction with a "creditor," as defined in 15 U.S.C. § 1602(f). Third, the mortgage loan must be secured by the "consumer's principal dwelling," as defined with reference to the definition of "dwelling" in 15 U.S.C. § 1602(v). Fourth, the mortgage loan must be a second or subordinate residential mortgage, not a "residential mortgage transaction," a "reverse mortgage transaction," or a transaction under an "open credit plan." Fifth, the mortgage loan must satisfy either of two tests set forth in 15 U.S.C. § 1602(aa)(1). The first test applies when the annual percentage rate of interest for the loan transaction exceeds certain levels. See 15 U.S.C. § 1602(aa)(1)(A).[2] The second test applies when the total "points and fees" payable by the borrower at or before closing will exceed the greater of—(i) 8 percent of the total loan amount; or (ii) $400.[3]

*Lopez v. Delta Funding Corp.*, 1998 WL 1537755, at *5 (E.D.N.Y. Dec. 23, 1998) (footnotes omitted); 15 U.S.C. § 1602(aa)(1); *see also,* 12 C.F.R. § 226.32. Upon *de novo* review, this Court concludes that Nelson's Chase Mortgage and Home Equity Line are not covered by HOEPA, as discussed below.[4]

---

**2.** The first test applies when the annual percentage rate ("APR") of interest for the loan transaction exceeds ten (10) percentage points above the yield on treasury securities having maturity periods comparable to the loan maturity. This test is known as the "APR Spread Test." *See* 15 U.S.C. § 1602(aa)(1)(a). HOEPA's trigger rates are modified from time to time pursuant to Regulation Z of the Code of Federal Regulations. *See* 12 C.F.R. § 226.32. In 2001, the Board of Governors of the Federal Reserve System lowered the trigger rate set forth in 15 U.S.C. § 1602(aa) from ten percentage points to eight. *See* 66 FR 65604–01, 2001 WL 1627493.

**3.** Section 1602 provides for annual adjustment of this figure. The relevant dollar amount for 2006, when the loan transactions at issue occurred, was $528. *See* 12 C.F.R. § 226 (Reg. Z; Docket No. R–1231) (2006). Given the dollar figures involved here, this figure is not relevant to the Court's analysis.

**4.** Defendants' principal HOEPA defense is that neither the Chase Mortgage nor the Home Equity Line qualifies as high-interest loan. Before addressing the merits of that argument, however, the Court notes that HOEPA does not apply to principal residential mortgages. The Court questions whether the Chase Mortgage, which presumably is now the primary mortgage on Nelson's home—the prior mortgage with Wells Fargo

### 1. Defendant Chase

█ As to Chase—the loan issuer—the terms, conditions and circumstances of the relevant transactions satisfy the first three factors necessary to trigger HOEPA. Indeed, it is undisputed that the Chase Mortgage and the Home Equity Line are: (1) consumer credit transactions (2) entered into with Chase, a "creditor," and (3) secured by Nelson's principal dwelling.[5] With respect to the fourth factor, namely, that the transaction be in the nature of a "closed credit plan," there is no doubt that a traditional mortgage loan is a "closed-end" extension of credit. In other words, the mortgage is a fully completed transaction, in which "the finance charge is divided into the term of the loan and incorporated into time payments." *McAnaney v. Astoria Fin. Corp.*, No. 04–cv–1101, 2007 WL 2702348, at *6 (E.D.N.Y. Sept. 12, 2007) (internal quotes and citations omitted). For argument's sake, this Court also regards the Home Equity Line as a closed-end transaction, despite the fact that such transactions are often viewed as open-ended, and thus HOEPA exempt.[6]

and New Century having been completely satisfied in connection with loans made here—would qualify as a residential mortgage and therefore be exempt from HOEPA. *But cf. Smith v. Chase Mortg. Credit Group*, 653 F.Supp.2d 1035, 1042 (E.D.Cal.2009) (suggesting that complete mortgage refinancing, even where conducted by new lender, may not qualify as a residential mortgage under HOEPA). As the issue has not been briefed, the Court instead relies upon the high-interest rate analysis.

5. As stated in Magistrate Judge Lindsay's Initial R & R (docket no. 68 at p. 10), § 1602(aa)(1) applies only to "mortgages" secured by the consumer's principal dwelling. Accordingly, the Magistrate found that a revolving line of credit does not qualify as a "mortgage" for HOEPA purposes. This interpretation of the statute may ultimately prove correct, however, the deliberate intertwining of the Chase Mortgage and the Home Equity Line here was designed to provide a single block of funding sufficient to extinguish Nelson's prior mortgage in favor of the Chase loans. As such, and because Chase has failed to adequately explain the legal implications, if any, for structuring what amounts to a one-time loan transaction in this manner, the inference that the Home Equity Line is a species of secured mortgage shall be drawn in Nelson's favor, at least for purposes of analyzing the instant motion. In this regard, the Court's bases for dismissing Nelson's HOEPA claims differ slightly from those of the Magistrate Judge.

6. One question presented here is whether, under the relevant facts and circumstances, the Home Equity Line of credit may also be regarded as a closed-end transaction for HOEPA purposes. Typically, the answer to that question is: no. A revolving credit line, as here, is generally deemed an open-end transaction; that is, a credit plan under which the creditor reasonably contemplates repeated transactions—a credit card, for instance. *McAnaney*, 2007 WL 2702348, at *6. In this case, the Home Equity Line agreement executed by Nelson expressly characterizes the Home Equity Line as "open-end" credit plan, which would render it HOEPA exempt. In light of Nelson's failure to challenge that characterization, the Magistrate Judge correctly determined that Nelson failed to establish that HOEPA is applicable. This Court finds no error in that holding. Nonetheless, at least some courts have deemed open-ended home equity credit lines to be "closed-end" transactions for HOEPA purposes, where, as here, the entirety of the credit line is paid in a lump sum cash payout at closing. In so doing, the exhaustion of the credit line at the outset renders the transaction more in line with a traditional mortgage loan than an open-ended (i.e., multiple or repeat use) revolving credit line, regardless of how that credit line may be characterized by the lender. *See, e.g., In re Merriam*, 333 B.R. 22, 27 (W.D.N.Y.2005). Indeed, here, it was always anticipated that Nelson's refinancing would amount to a one-time loan transaction totaling $500,000 in financing. But, because of legal restrictions or internal Chase requirements, a traditional mortgage would not or could not issue in excess of 80% of Nelson's $500,000 appraised home value. Accordingly, the $100,000 remainder was structured as a one-time, fully-disbursed credit line. Thus,

This Court does so in light of the intertwined nature of the two relevant and simultaneous transactions, and the parties' intent that the resultant funding should be aggregated. Facts that arguably might render even an expressly open-ended home equity loan transaction indistinguishable from a closed-ended mortgage loan. Even assuming, *arguendo*, that the combined loan transaction at issue here is closed-ended, however, summary judgment is nonetheless warranted.

Despite all reasonable inferences drawn in her favor, Nelson cannot satisfy the fifth factor of the HOEPA applicability test; i.e., she cannot establish that the terms and conditions of the combined loan transaction satisfy HOEPA's high-cost or high-rate loan requirements.[7] Specifically, Nelson cannot demonstrate that the effective interest rate on the combined transaction, generated by a weighted average of the 7.34% APR [8] Chase Mortgage and the 9% APR [9] Home Equity Line, exceeds the interest rate on a comparable Treasury security by eight percentage points or more, a condition for HOEPA applicability set forth in 15 U.S.C. § 1602(aa)(1)(A) and 12 C.F.R. 226.32, nor can she demonstrate that the points and fees imposed at closing exceeded eight percent of the $500,000 total loan value, an alternative condition required under 15 U.S.C. § 1602(aa)(1)(B).[10]

in all material respects, the Home Equity Line was treated as a supplemental mortgage. For these reasons, it is reasonable to regard the Home Equity Line as a closed-end transaction for HOEPA purposes, which this Court does strictly for purposes of its HOEPA analysis. *See id.*

7. Generally, the Chase Mortgage and the Home Equity Line—as two distinct transactions—would be analyzed separately for HOEPA purposes. *See, e.g., Merriam*, 333 B.R. at 28. Accordingly, the Court would independently determine whether the 7.34% APR on the Chase Mortgage exceeded the Treasury rate by eight percentage points, or whether the closing costs on that transaction exceeded eight percent of the $400,000 mortgage. *Id.* The same HOEPA analysis would then independently be undertaken as to the $100,000 Home Equity Line, with its estimated 9% APR. In short, the two transactions would *not* be aggregated for HOEPA purposes. The wrinkle in doing so here is that, to the contrary, the parties regarded the Chase Mortgage and the Home Equity Line as a single transaction, see discussion at n. 6, *supra*. Indeed, Chase recognized that both credit deals would be closed simultaneously, as part of a total credit extension of $500,000. As inducement to enter into that combined transaction, Chase waived its closing costs and fees as to the Home Equity Line, charging such fees only with respect to the $400,000 mortgage. *See* Reardon Aff., Ex. L. These facts distinguish this case from the facts of *Merriam*, in which the Court separately analyzed a combined Mortgage/Home Equity Line, assessing each by the separate closing costs and fees applicable to each deal. *Id.* But, regardless of whether the two transactions are aggregated or analyzed separately, neither analysis suggests that the loans issued here constitute high-cost or high-rate loans for HOEPA purposes.

8. HOEPA's high-cost-loan analysis is determined by reference to APR. 15 U.S.C. 1602(aa)(1). The Chase Mortgage is fixed at 7% *per annum* (the "note rate"); however, its APR is slightly higher, at 7.34%. The APR and the note rate differ as follows: in addition to interest on principal, APR factors fees and costs over the life of the loan into the rate determination, doing so permits consumers to better compare loan products.

9. The Court notes that Home Equity Line APR is variable. Moreover, Chase's briefing papers do not express the interest in APR terms, but assert only the 8.5% note rate. The APR figure is found in the Home Equity Line documents at Exhibit J of the Reardon Affidavit, and the Court applies this figure in its analysis.

10. Under the first test (the "Annual Percentage Test"), a loan is subject to HOEPA if the APR payable on the loan exceeds by more than eight percentage points the yield on Treasury securities having a comparable period of maturity (as measured on the fifteenth

For these reasons, HOEPA's provisions are inapplicable, and her HOEPA claims in this regard are dismissed.

### 2. Defendants Nektolov and Funding Unlimited, Inc.

■ As to Defendant Nektolov, a mortgage broker, and Defendant Funding Unlimited, Inc., Nektolov's brokerage employer, the Court concurs with the Magistrate Judge's determination that mortgage brokers are not "creditors" as that term is defined under the general TILA regulations applicable to HOEPA. *See* 15 U.S.C. § 1602(f); 12 C.F.R. § 226.2(a)(17)(i); *Iannuzzi v. Washington Mut. Bank*, No. 07–CV–964, 2008 WL 3978189, at *7–8 (E.D.N.Y. Aug. 21, 2008) (dismissing HOEPA claims against mortgage brokers); *see also Robey–Harcourt v. BenCorp Fin. Co.*, 326 F.3d 1140, 1142–43 (10th Cir. 2003); *Wilson v. Homecomings Fin. Network, Inc.*, 407 F.Supp.2d 893, 896 (N.D.Ohio 2005); *Noel v. Fleet Fin.*, 971 F.Supp. 1102, 1109 (E.D.Mich.1997). As such, HOEPA is inapplicable as to Nektolov and Funding Unlimited, Inc. Thus, having reviewed these claims *de novo*, this Court adopts the Magistrate Judge's analysis in this regard, and Nelson's HOEPA claims as to these Defendants are hereby dismissed.

### B. RESPA

■ In her Complaint, Nelson fails adequately to identify the RESPA provisions under which she seeks relief. Mindful that Nelson is *pro se*, the Magistrate liberally construed Nelson's Complaint to assert RESPA claims based on Defendants' alleged failure to timely provide RESPA-required disclosure statements. Nonetheless, the Magistrate Judge found that Nelson's disclosure-related RESPA claims were subject to dismissal. Upon *de novo* review and for the reasons below, this Court agrees.

RESPA was enacted to enable consumers to better understand the home purchase and settlement process (with respect to federally regulated mortgage loans) and, where possible, to bring about a reduction in settlement costs. *See* 12 U.S.C. § 2601. First, RESPA requires that borrowers receive certain disclosures explaining the costs associated with settlement and describing lender services and escrow account practices. *See* 12 U.S.C. §§ 2603, 2604; *see also* 24 C.F.R. § 3500.7; 12 C.F.R. § 226.5b; 12 U.S.C. §§ 2603 and 2604, as modified by 24 C.F.R. § 3500.7 (relating to mortgage disclosures) and 12 C.F.R. § 226.5b (relating to home equity disclosures). RESPA further requires

---

day of the month immediately preceding the month in which the application for the loan was received by the creditor). 15 U.S.C. § 1602(aa)(1)(A); *In re Balko*, 348 B.R. 684, 691 (W.D.Pa.2006). "A determination under the Annual Percentage Test is rather simple; a court need do no more than peruse a copy of the *Wall Street Journal* in order to find the applicable rate(s) and perform the comparison." *Id.* Accordingly, this Court adopts the Magistrate Judge's implicit finding that Chase's stated Treasury rate of 5.13%, disclosed contemporaneously with the closing of the Chase Mortgage transaction, is accurate. *See* Affidavit of Thomas E. Reardon, Asst. V.P. of Chase Home Fin., sworn Sept. 10, 2008 at Exh. O ("Reardon Aff."). In this case, the

transaction must not exceed 13.13%—the 5.13% Treasury rate plus eight percentage points.

Meanwhile, "[t]he 8% threshold of section 1602(aa)(1)(B) is calculated through the process of simple division, in which the numerator represents the total of fees and points while the denominator represents the total loan amount." *Merriam*, 333 B.R. at 28. To trigger HOEPA disclosure requirements, Nelson must demonstrate that the combined closing fees exceeded $40,000; i.e., eight percent of the $500,000 total loan value. She has failed to do so. Here, the documentary evidence submitted on summary judgment evidences total settlement costs of $28,716.73, significantly less than 8% of $500,000.

that lenders and/or brokers provide a Good Faith Estimate ("GFE") of settlement costs and fees in connection with mortgage loans and home equity credit lines. 24 C.F.R. § 3500.7.[11] In support of its motion for summary judgment, and to dispel allegations that requisite disclosures had not been timely provided, Chase annexes to the summary judgment record two categories of disclosure documents: (1) GFEs for both the Chase Mortgage and the Home Equity Line, prepared prior to closing by Funding Unlimited, each of which is dated July 24, 2006, and (2) various Chase-prepared disclosures delivered to Nelson prior to or at the August 14, 2006 closing. For her part, Nelson does not dispute receipt of any of the Chase-prepared material, which documents she affirmatively executed at closing. In her opposition papers, however, Nelson denies receipt of the July 24, 2006 GFEs prepared by Funding Unlimited. By extension, she necessarily implies that Chase failed in its statutory obligation to confirm her receipt of all broker-prepared material, see 24 C.F.R. 3500.7(a)(1), (b)(1). For the reasons below, Nelson's complaints in this regard fail to give rise to actionable claims.

A review of the evidentiary record reveals that the July 24, 2006 GFEs are unsigned. This Court, however, is not aware of any authority which requires consumer signatures on such forms. To the contrary, although 24 C.F.R. § 3500.7 requires that such disclosures be made, it permits delivery by various unconfirmed means, including by hand delivery, by regular mail and even electronically, without setting forth an express requirement or procedure for acknowledgment of receipt. *Id.* This Court thus cannot conclude that the absence of Nelson's signature on the July 24, 2006 GFEs amounts to a *per se* RESPA violation, or even that it conclusively demonstrates failure of delivery. Moreover, it is Nektolov's testimony that—as indicated by checkboxes on the disclosure forms—he did in fact provide Nelson with those documents pursuant to a face-to-face meeting at Funding Unlimited on or about July 24, 2006. *See* Reply Affidavit of Benny Nektolov, sworn Oct. 30, 2008, ¶ 11. The parties' contrary testimony on this issue raises a genuine question of fact; however, for two reasons, this Court concludes that such question is not material to the survivability of Nelson's RESPA claims and does not preclude summary judgment.

First, even assuming that the July 24, 2006 GFEs were never delivered, Nelson fails to articulate what damage proximately resulted. The undisputed fact is that at closing Nelson was provided with, re-

---

**11.** 24 C.F.R. § 3500.7 states, in relevant part, as follows:

(a) Lender to provide.

(1) Except as otherwise provided ... not later than 3 business days after a lender receives an application, or information sufficient to complete an application, the lender must provide the applicant with a GFE [Good Faith Estimate].

(2) The lender must provide the GFE to the loan applicant by hand delivery, by placing it in the mail, or, if the applicant agrees, by fax, e-mail, or other electronic means.

\*      \*      \*

(b) Mortgage broker to provide.

(1) Except as otherwise provided ... either the lender or the mortgage broker must provide a GFE not later than 3 business days after a mortgage broker receives either an application or information sufficient to complete an application. The lender is responsible for ascertaining whether the GFE has been provided. If the mortgage broker has provided a GFE, the lender is not required to provide an additional GFE.

(2) The mortgage broker must provide the GFE by hand delivery, by placing it in the mail, or, if the applicant agrees, by fax, email, or other electronic means.

viewed, and signed a HUD Form–1A—an itemized listing of all actual settlement costs. The HUD Form–1A lists, among other things, a total settlement cost of $28,716.73, which sum includes Funding Unlimited's $12,000 broker's fee—3% of the $400,000 Chase Home Mortgage value. Nelson was thus aware, at the time of closing, of the precise cost of all applicable settlement fees, regardless of whether or not she ever received a rough estimate of such costs by virtue of the Funding Unlimited GFEs in July 2006.

■ Second, and more importantly, even assuming Defendants' failure to make RESPA disclosures, RESPA itself provides no private right of action for technical violations of its disclosure mandates. *See Chow v. Aegis Mort. Corp.*, 286 F.Supp.2d 956, 962 (N.D.Ill.2003) (surveying RESPA disclosure cases and legislative history and holding that technical violations of RESPA disclosure requirements do not give rise to a private right of action); *see also Iannuzzi*, 2008 WL 3978189, at *7 n. 3; *Mercado v. Playa Realty Corp.*, No. 03–cv–3427, 2005 WL 1594306, at *9 (E.D.N.Y. July 7, 2005) ("[Section 2604] does not explicitly authorize a private right of action, and the Second Circuit has not ruled on whether it creates an implied private right of action. All other courts that have considered this question have refused to find an implied private right of action under the provision."); *Collier v. Home Plus Associates*, No. 43481/03, 18 Misc.3d 1121(A), 2007 WL 4793201, at *6 (N.Y.Sup.Ct. Dec. 21, 2007) ("[I]nsofar as the complaint alleges violations of the Real Estate Settlement Procedures Act (12 USC § 2601 *et seq.* [RESPA]), namely 12 USC § 2603 and 12 USC § 2604, it does not set forth a viable cause of action because §§ 2603 and 2604 do not provide for a private right of action."); *see also Collins v. FMHA–USDA*, 105 F.3d 1366, 1367 (11th Cir.1997); *Cohen v. JP Morgan Chase & Co.*, No. CV–04–4098, 2006 WL 20596, at *3 (E.D.N.Y. Jan. 4, 2006) (noting that "[t]he prior version of § 2604 contained a provision for a private right of action, Pub.L. No. 93–533 § 6, 88 Stat. 1158 (1974), but that provision was eliminated when Congress amended the statute in 1976. Pub.L. No. 94–205 § 5, 88 Stat. 1726 (1976)"), *vacated and remanded on other grounds*, 498 F.3d 111 (2d Cir. 2007); *McAnaney v. Astoria Fin. Corp.*, 357 F.Supp.2d 578, 591 (E.D.N.Y.2005); *Mentecki v. Saxon Mort., Inc.*, No. Civ. A. 96–1629–A, 1997 WL 45088, at *4 (E.D.Va. Jan. 10, 1997); *Brophy v. Chase Manhattan Mort. Co.*, 947 F.Supp. 879, 881–83 (E.D.Pa.1996); *Campbell v. Machias Sav. Bank*, 865 F.Supp. 26, 31–32 (D.Me.1994). Accordingly, Nelson's RESPA disclosure claims against Defendants are hereby dismissed.

## C. TILA

■■ Upon *de novo* review of the issue, but for substantially the reasons set forth in the Magistrate Judge's well-reasoned Amended R & R, this Court concurs that (a) TILA is not applicable to Defendants Nektolov and Funding Unlimited, Inc., and (b) that Chase complied with TILA's requirements to provide adequate disclosures. As such, this Court adopts the Magistrate Judge's TILA analysis as its own. The TILA claims against all Defendants are hereby dismissed.

## II.

## ADDITIONAL ALLEGATIONS

In addition to the alleged violations of TILA, HOEPA and RESPA discussed above, Nelson's papers in opposition to Summary Judgment (docket nos. 52 & 79) advance, for the first time, RESPA-based

claims.[12] Nelson complains of allegedly illegal fees paid to Funding Unlimited, including the payment of a "Yield Spread Premium" in excess of the designated 3% broker's fee—a potential RESPA violation under 12 U.S.C. § 2607(c)(2); 24 C.F.R. § 3500.14(g)(2). Defendants attempt to address this claim in cursory fashion. *See* Memorandum of Law of Defendants JPMorgan Chase Bank, N.A. and Chase Home Finance, LLC in Support of Motion for Summary Judgment (docket no. 52) at 6; the Reply Affidavit of Alan Blumen, Esq. (docket no. 53–7) at ¶¶ 28, 37; and the Reply Affidavit of Benny Nektolov (docket no. 53–8), *passim*. In light of these circumstances, the Court shall schedule a conference to address whether a pleading amendment is warranted.

## CONCLUSION

For the reasons set forth above, Magistrate Judge Lindsay's recommendations are ADOPTED with respect to TILA, HOEPA, and RESPA disclosure claims discussed therein. Accordingly, it is hereby ORDERED that those claims are DISMISSED.

It is FURTHER ORDERED all parties appear before the undersigned on April 29, 2010 at 12:30 in Courtroom N6F in the North Wing of the United States Courthouse, 225 Cadman Plaza East, Brooklyn, New York to assess whether new allegations, made by Plaintiff in her opposition to Defendants' Motion for Summary Judgment, should properly be the subject of an amended pleading. All parties shall confer with one another to ensure that all are aware of this conference, and be fully prepared to address this issue.

The Clerk of Court is directed to mail a copy of this Order to Plaintiff *pro se* Klassik Nelson at the address listed on the docket.

SO ORDERED.

---

12. Plaintiff also alleges claims of common law fraud and forgery, over which this Court could arguably exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Plaintiff alleges that the Chase Mortgage application was prepared with her knowledge, but submitted by Nektolov to Chase without her signature. *See* Affidavit of Klassik Nelson (docket no. 52) (the "Nelson Aff.") ¶ 5. Second, she claims that her signature on the Home Equity Line application is a forgery. *See* Nelson Aff. at ¶ 11, Ex. D.